534 A.2d 460

**In re Marjorie L. DOBSON.**

**Petition of Marjorie L. DOBSON.**

**In re PROHIBITED POLITICAL ACTIVITY BY COURT APPOINTED EMPLOYEES.  (Two Cases)**

**Petition of Joseph A. PANUCCI.**

**Petition of Gerald MATTHEWS.**

Supreme Court of Pennsylvania.

Argued Sept. 22, 1987.

Decided Dec. 7, 1987.

Martin F.P. Vinci, III, Lewis, Vinci & Partel, Coraopolis, Thomas J. Michael, Gallo, Weiner & Michael, Pittsburgh, for Marjorie L. Dobson.

Vincent A. Tucceri, Gaitens, Tucceri & Nicholas, P.C., Pittsburgh, and Robert T. Crothers, Peacock, Keller, Yohe, Day & Ecker, Washington, Barbara A. Rizzo, for Prohibited Political Activity by Court Appointed Employees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

The purpose of this opinion is to explain our decisions denying relief to the petitioners in the above-captioned cases. Those matters concerned the applicability of this Court's order of June 29, 1987, barring court-appointed employees from engaging in partisan political activity.[1]

Our order of June 29, 1987, reaffirmed and provided guidelines for this Court's already-existent prohibition against political activity by persons employed in the judicial system. Pursuant to the express terms of the 1987 order and guidelines, which were to take effect thirty days after issuance, any court-appointed employee engaged in partisan political activity had to cease such activity at once or be terminated from his judicial employment. Shortly after promulgation of the order and guidelines, three individuals holding court-appointed positions, Marjorie L. Dobson, Joseph A. Panucci and Gerald Matthews, separately invoked this Court's original jurisdiction and petitioned us for relief from the order's prohibition, asserting that it should not apply to his or her situation. Each of those petitions was accompanied by an application for a stay of the enforcement of the order, which we granted pending resolution of the claim for relief.

On October 15, 1987, after having heard the three cases on the merits, we in each instance entered a *per curiam* order denying relief and dissolving the stay, 516 Pa. 26, 531 A.2d 1113. As stated in those orders, a written opinion was to follow. Accordingly, we hereby set forth the reasons for our decisions.

The text of our order of June 29, 1987, regarding political activity by court employees is as follows:

## ORDER

PER CURIAM

---

1. 82 Judicial Administration Docket No. 1.

AND NOW, this 29th day of June, 1987, the prohibition against political activity by court-appointed employees is hereby *affirmed,* and the attached guidelines are intended to *clarify the policy which was previously approved* by this Court. These guidelines shall become effective within thirty (30) days of the date of this Order. (Emphasis added.)

In the guidelines annexed to the above order,[2] the operative proscription against political activity is concisely set forth: "Court-appointed employees shall not be involved in any form of *partisan political activity.*" (Emphasis added.) The guidelines define the phrase "partisan political activity"; the part of that definition relevant to the instant

2. The full text of the Guidelines is as follows:

### GUIDELINES REGARDING POLITICAL ACTIVITY BY COURT–APPOINTED EMPLOYEES

**1. Definitions.**

(a) The term "partisan political activity" shall include, but is not limited to, running for public office, serving as a party committeeperson, working at a polling place on Election Day, performing volunteer work in a political campaign, soliciting contributions for political campaigns, and soliciting contributions for a political action committee or organization, but shall not include involvement in non-partisan or public community organizations or professional groups.

(b) The term "court-appointed employees" shall include, but is not limited to, all employees appointed to and who are employed in the court system, statewide and at the county level, employees of the Administrative Office of Pennsylvania Courts, Court Administrators and their employees and assistants, court clerks, secretaries, data processors, probation officers, and such other persons serving the judiciary.

**2. Prohibition on Partisan Political Activity.**

Court-appointed employees shall not be involved in any form of partisan political activity.

**3. Termination of Employment.**

Henceforth, a court-appointed employee engaging in partisan political activity shall cease such partisan political activity at once or shall be terminated from his or her position. In the event an employee chooses to become a candidate for any office, such employee shall be terminated, effective the close of business on the first day of circulating petitions for said office.

**4. President Judge.**

The President Judge of each appellate court or county court of common pleas shall be responsible for the implementation of these guidelines and shall be subject to the review of the Judicial Inquiry and Review Board for failure to enforce.

matters is as follows: "The term 'partisan political activity' shall include, but not be limited to, running for public office ... *but shall not include involvement in non-partisan or public community organizations or professional groups."* (Emphasis added.)

We will discuss first the cases of Joseph A. Panucci and Gerald Matthews, since those two matters are essentially identical in factual and legal posture.

Mr. Panucci is a tipstaff of a judge of the Court of Common Pleas of Allegheny County, and has served in that capacity since 1976. In the primary elections held in May of 1987, Panucci ran in both the Democrat and Republican contests to become a candidate for a seat on the school board of the Sto–Rox School District in Allegheny County. Mr. Panucci was victorious in both primaries, and thus became the candidate of both parties for the upcoming November 1987 municipal election.

Petitioner Gerald Matthews is also a tipstaff, serving as such for a Common Pleas judge of Greene County. He has been a tipstaff since June of 1986. Matthews also currently serves as a member of the board of school directors of a local school district, having been first elected to that post in 1981. Seeking to be re-elected to his seat on the school board in the November, 1987, municipal election, Mr. Matthews entered the May primaries of the Democrat and Republican parties. He, like Mr. Panucci, won both primaries and became the candidate of both parties for the election to be held in November of 1987.

There can be no disputing that Panucci and Matthews, both court-appointed employees, are running for public elective office. However, each of these petitioners asked us to relieve him from the effect of our June 29, 1987 order, that is, to exempt him from having to relinquish his judicial position to run for the office of school director.

In asserting that they should be exempt from our mandate against partisan political activity by court employees, petitioners Panucci and Matthews presented the same arguments. They first contended that, because the office of

school director is non-partisan in nature, their efforts to be elected to the post do not constitute "partisan political activity" within the meaning of our 1987 guidelines. In support of that argument, they focussed on the exception in the guidelines permitting "involvement in non-partisan or public community organizations or professional groups." According to Messrs. Panucci and Matthews, the pursuit of a directorship on a public school board constitutes "involvement in a non-partisan or public community organization," and thus is not proscribed political activity. As a further effort to establish that their respective candidacies do not represent *partisan* political activity, each of the above two petitioners pointed to the fact that he was the candidate of both the Democrat and Republican parties for the school board seat he was seeking. For the reasons that follow we rejected those arguments as being without merit.

Our order of June 29, 1987, expressly states that it is an affirmation of this Court's earlier rules barring political activity by appointed employees of the judiciary. In 1976 and 1977 the Court Administrator of Pennsylvania promulgated, on behalf of this Court, a series of directives prohibiting partisan political activity by court-appointed employees and subjecting offenders to the sanction of discharge if such activity was not terminated within a given period of time. The scope of the prohibition announced by those directives included running for elective office, holding a position in the organizational structure of a political party, and working on behalf of a party or candidate.

In the case of *In re Prohibition of Political Activities by Court–Appointed Employees*, 473 Pa. 554, 375 A.2d 1257 (1977), we had occasion to consider the applicability and validity of the 1976 and 1977 directives. In that case three court-appointed employees, two of whom were law clerks seeking election to school boards, sought exemption from the prohibition. The other employee was a tipstaff who also held a seat on a borough council. He sought leave to complete his then current councilmanic term, run for reelection, and serve another term if victorious, all without being

compelled to resign his judicial position. As to him, we granted limited relief, permitting him to complete his current term.

In *Prohibition of Political Activities by Court–Appointed Employees, supra,* the two law clerks advanced the argument that a school board directorship is a non-political office, and thus, that their candidacies should not be deemed political activity within the meaning of the prohibition. One of the clerks, in a further effort to exempt his candidacy from being considered political activity, drew to our attention the fact that he had won the nomination of both major political parties and was thereby virtually assured of election. We rejected the foregoing arguments, and concluded that the quest by the law clerks for school board seats put them in violation of the directives.

> Petitioners Silvestri and Kaminski argue that in running for election to the offices they respectively seek, they are not engaging in political activity because they were nominated on both major party tickets and are virtually assured of election. We cannot accept this argument; even were a political campaign held to be nonpolitical because no other person has been nominated to office, the argument overlooks the fact that it is the holding of the office as well as the obtaining of it which is interdicted. Nor can we agree with petitioners Gobel and Silvestri that election to the office of school director, because it pertains to public education, is not election to a political office. Thus we conclude that each of the petitioners is covered by the directives in question.

*Id.,* 473 Pa. at 560–561, 375 A.2d at 1260.

Despite the clear holding in the above-cited case that a school board directorship is a political office and that, consequently, running for it is political activity, petitioners Panucci and Matthews would have us nullify the effect of that decision because of a provision in the Pennsylvania Election Code ("Code").[3] By force of a 1972 amendment of

3. Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. § 2600 *et seq.*

section 1004 of the Code,[4] elective school board director-ships were added to the types of elective public offices for which candidates seeking them are permitted to have their names placed on the primary ballot of more than one political party. In the petitioners' view, this statutory provision is a legislative recognition that the office of school director is nonpartisan in nature. For that proposition they rely on language in *Thompson v. Morrison*, 352 Pa. 616, 44 A.2d 55 (1945). There, this Court stated that one of the purposes of section 1004 of the Code, in allowing candidates for certain offices to run on the ticket of more than one party, "was to provide for the nonpartisan selection" of candidates in that class. *Id.*, 352 Pa. at 620, 44 A.2d at 57.

Although *Thompson* involved the application of section 1004 of the Code to judges running for election, the petitioners extend the Court's interpretation of that statute's purpose to elective school board directors, since candidates for that office are now included in the same legislative provision. Based on that consideration, the petitioners would have us disregard our holding in *Prohibition of Political Activities by Court–Appointed Employees, supra,* and conclude that the office of school director is nonpartisan and that seeking the office is nonpartisan political activity for purposes of our order of June 29, 1987. The petitioners' argument along these lines is devoid of merit for several reasons.

First, the fact that the legislature has *provided for* the nonpartisan selection of school board directors does not negate the fact that such a post, if elective, is still one which is obtained through the political process; nor is there any alteration of the reality that a person entering that process to obtain such an office is, by definition, engaged in political activity. And, merely because a seeker of public elective office is the candidate of the two major political parties does not necessarily render his efforts nonpartisan. He may even have to vie against a third-party or independent candidate in the general election. Moreover, the doc-

4. 25 P.S. § 2964.

trine of separation of powers, enshrined in the Pennsylvania Constitution, vests in this Court supervisory power over the judiciary, including its employees. *Kremer v. State Ethics Commission*, 503 Pa. 358, 469 A.2d 593 (1983). Thus, it is for this Court, not the legislature, to determine what amounts to prohibited political activity by judicial employees.

Having found no merit in any of the arguments advanced by petitioners Panucci and Matthews, we denied them relief.

██ We turn now to the third petitioner in the instant matters, Marjorie L. Dobson. The factual posture of her case differs from that of the other two petitioners, as does the nature of the relief she requested us to provide. In 1977 Mrs. Dobson was elected Tax Collector of Baldwin Borough, in Allegheny County, for a four-year term. She was reelected to that office in 1981. *In 1984*, while still serving as Tax Collector, she became a tipstaff of a judge of a Court of Common Pleas and has continued to hold that judicial position. In the election of November 1985 Mrs. Dobson was reelected to her third successive term as Tax Collector. Her current term of office will expire in January 1990. The relief sought by this petitioner is leave to complete the remainder of her present term as Tax Collector without being compelled to relinquish her position as tipstaff. Her argument for such relief is based in part on the fact that our 1987 guidelines do not expressly mention incumbents. In that regard, Dobson asserts that the prohibition against political activity is concerned with candidacy and other partisan activities, not with the actual holding of political office. In further support of her claim for reliefcts Dobson reminds us that under our decision in *Prohibition of Political Activities by Court–Appointed Employees, supra*, an incumbent councilman was permitted to complete his current term without losing his judicial position.

██ Mrs. Dobson's first argument ignores that in the above-cited case we held that the prohibition interdicted both the running for public office and the holding of it. 473 Pa. at 561, 375 A.2d at 1260. There is nothing in our 1987

guidelines to even suggest a retreat from that principle. As for her second argument, it is true that in *Prohibition of Political Activities by Court–Appointed Employees* we did permit an incumbent to complete his term. However, the incumbent there involved was already in his elected office prior to the promulgation of our first prohibition, the directives issued in 1976 and 1977. On the other hand, when Mrs. Dobson became a tipstaff in 1984, those same 1976 and 1977 directives against political activity by court employees were already in force. Therefore, she assumed her judicial position subject to that mandate: a mandate she violated by running for reelection as Tax Collector in 1985. The violation was not extinguished by her subsequent swearing-in ceremony.

Mrs. Dobson lastly contends that when she ran for reelection in 1985 the Ethics Act of 1978 [5] gave her the right to do so, and thus was in conflict with our directives of 1976 and 1977. However, as we have already mentioned, the legislature cannot constitutionally infringe upon the power of this Court to supervise employees of the jurdiciary. *Kremer v. State Ethics Commission, supra.* It is to be noted that our decision in *Kremer* was rendered before Dobson became a judicial employee, and should have removed any notion that her employment would be governed by anything other than the valid dictates of this Court.

In *Commonwealth ex rel. Specter v. Moak*, 452 Pa. 482, 307 A.2d 884 (1973), this Court upheld as constitutional the power of an appropriate governmental unit to regulate the political activities of its officers and employees. Surely, this Court itself, as head of an independent branch of state government, has that same power. Our directives against political activity by court-appointed employees are an exercise of that power. As we observed in *Prohibition of Political Activities by Court–Appointed Employees, supra,* the purpose of such a prohibition is to "maintain not only the independence, integrity and impartiality of the judicial system but also the appearance of these qualities."

5.  Act of October 4, 1978, P.L. 883, 65 P.S. § 401 *et seq.*

473 Pa. at 560, 375 A.2d at 1259. Fidelity to that purpose compelled the decisions entered by us in the instant matters.

Accordingly, on October 15, 1987, we entered orders denying the relief requested by the petitioners and dissolved the stays previously entered.

Former Justice HUTCHINSON did not participate in the consideration or decision of these cases.

LARSEN and ZAPPALA, JJ., dissent.