560 A.2d 271

**Theodore J. GIGLIO, Petitioner,**

**v.**

**COMMONWEALTH of Pennsylvania, UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 8, 1989.

Decided June 12, 1989.

---

472

Armand E. Olivetti, Jr., Olivetti and Scacchitti, Scranton, for petitioner.

Clifford F. Blaze, Deputy Chief Counsel, Wade A. Fluck, Asst. Counsel, Harrisburg, for respondent.

Before CRUMLISH, Jr., President Judge, and CRAIG, DOYLE, BARRY, COLINS, McGINLEY and SMITH, JJ.

## OPINION

BARRY, Judge.

Theodore J. Giglio (Claimant) petitions for our review of an order of the Unemployment Compensation Board of Review (Board) affirming a referee's decision to deny benefits. The Board modified the referee's decision, however, determining that the Claimant was ineligible for benefits under Section 402(e) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e) (willful miscon-

duct) rather than Section 402(b) of the Law, 43 P.S. § 802(b) (voluntary quit) as determined by the referee. We affirm.

The Claimant was employed as an adult probation officer by Lackawanna County Adult Probation. In May of 1987 he sought nomination for the position of District Justice and won. By letter dated July 20, 1987, James J. Walsh, President Judge of the Court of Common Pleas of Lackawanna County, notified the Claimant that a June 29, 1987 order of the Supreme Court of Pennsylvania prohibited him, as a court-appointed employee, from being a candidate for public office. He was given the option of resigning from his position or dropping out of the race for public office. Further, he was notified that his failure to choose either of these options would result in his discharge. On July 29, 1987, after choosing to remain in the race and not resign from his position, the Claimant was discharged.

The Claimant applied for unemployment compensation benefits with the Office of Employment Security (OES) which denied his application concluding that he had voluntarily terminated his employment without cause of a necessitous and compelling nature. He appealed the OES's determination to the referee who affirmed on the same basis. He then appealed to the Board which affirmed but on the grounds that the Claimant was guilty of willful misconduct. The Claimant now appeals to this Court.

Our scope of review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Kirkwood v. Unemployment Compensation Board of Review,* 106 Pa.Commonwealth Ct. 92, 525 A.2d 841 (1987).

Willful misconduct has been defined as a wanton and willful disregard of an employer's interests, a deliberate violation of an employer's rules, a disregard of the standards of behavior which an employer can rightfully expect of an employee, or negligence manifesting culpability, wrongful intent, evil design or intentional and substan-

tial disregard of an employer's interests or an employee's duties and obligations. *Frumento v. Unemployment Compensation Board of Review*, 466 Pa. 81, 351 A.2d 631 (1976). Whether the Claimant's conduct constitutes willful misconduct is a question of law and as such is subject to our review. *Id.* Where, as here, it is alleged that the Claimant has violated a rule, the employer bears the burden of proving the existence of the rule and its violation. *Partsch v. Unemployment Compensation Board of Review*, 64 Pa.Commonwealth Ct. 293, 439 A.2d 1331 (1982). If both of these are proven the Claimant must show good cause to justify the rule violation in order to be eligible for benefits. *Id.* Further, we have noted that a claimant may defend against a charge of willful misconduct by showing that the rule is unreasonable or that his refusal to obey the rule is reasonable. *Ellis v. Unemployment Compensation Board of Review*, 68 Pa.Commonwealth Ct. 617, 449 A.2d 881 (1982). The Claimant argues in the case before us that his violation of the work rule was reasonable and, further, that the failure of the unemployment compensation authorities to award him benefits violates the First Amendment as applied to the Commonwealth through the Fourteenth Amendment of the United States Constitution in that no compelling state interest has been shown to support this infringement of his right to engage in political activity. He does not challenge the reasonableness of the rule.[1]

We note, as did Chief Justice Nealon of the United States District Court for the Middle District of Pennsylvania in *Giglio v. Supreme Court of Pennsylvania*, 675 F.Supp. 266 (M.D.Pa.1987), that the memoranda of the Court Administrator of Pennsylvania affecting the Claimant's case do not appear in the record. They do, however, appear in our Supreme Court's opinion in *In Re Prohibition of Political Activities by Court Appointed Employees*, 473 Pa. 554,

---

**1.** "[This case] involves the question of the unreasonableness of the refusal to obey the rule, not the reasonableness of the rule itself." Petitioner's brief at 11.

375 A.2d 1257 (1977). On March 3, 1976, the Court Administrator issued the following memorandum:

Questions have been raised concerning the employment by judges and justices of the peace of persons who are actively engaged in partisan political activities. Complaints have been received that persons are employed in judicial systems at the County level with the Courts of Common Pleas, justices of the peace, or constables, and that such persons are holding posts as committee persons and ward leaders. In addition, some of these individuals actively serve at the polls on Election Day as watchers or perform other functions of a political nature.

Such employment is improper, and those concerned with such employment, either as employers or employees, are hereby advised that, unless such party or political affiliation or activity is terminated within the next 30 days, such persons must be removed from judicial employment.

*Id.*, 473 Pa. at 558–59, n. 2, 375 A.2d at 1258–59, n. 2.

On May 7, 1976, the Administrator issued a supplemental memorandum covering the subject of political activity.

Since the memorandum of March 3, 1976, was issued by this Office as to prohibitive political activity, it has become apparent that confusion as to the scope of that advisory calls for clarification.

The memorandum was issued as a reminder to judges and district justices of the peace that they and their staffs should remain free from any political activity. It was also intended that district court administrators and their staffs would be subject to the prohibitions in the memorandum.

This Office is aware, of course, that some transitional time will be required in order to avoid undue disruption of court systems. For example, we have indicated that resignations be carried out in an orderly fashion within two weeks after the primary.

President Judges are asked to report on what steps are being taken to implement the memorandum, stating also what time allowances are being considered as reasonably required for eliminating such relationships.

*Id.*, 473 Pa. at 559, n. 3, 375 A.2d at 1259, n. 3.

On March 18, 1977, the Administrator issued another supplemental memorandum.

This memorandum is a reminder to judges and district justices of the peace that they and their staffs must remain free from any political activity. Persons employed in sensitive positions in the court system must not engage in partisan politics. This would preclude law clerks, court administrators and secretarial employees from being committee-persons, working at the polls or running for public office.

*Id.*, 473 Pa. at 560, 375 A.2d at 1259.

As noted by the Supreme Court in *Prohibition* these memoranda were issued with its knowledge and consent. Further, the Supreme Court's order of June 29, 1987, reiterating its policy with respect to political activity was accompanied by guidelines which specifically provided that probation officers were included in the definition of court-appointed employees.

The Supreme Court's prohibition against the involvement of court-appointed employees in political activities has repeatedly withstood constitutional attack. *In Re Dobson,* 517 Pa. 19, 534 A.2d 460 (1987), *Snyder v. Unemployment Compensation Board of Review,* 509 Pa. 438, 502 A.2d 1232 (1985), *Prohibition, County of Fayette v. Unemployment Compensation Board of Review,* 84 Pa.Commonwealth Ct. 260, 479 A.2d 1153 (1984). Our Supreme Court has stated:

In *Commonwealth ex rel, Specter v. Moak,* 452 Pa. 482, 307 A.2d 884 (1973), this Court upheld as constitutional the power of an appropriate governmental unit to regulate the political activities of its officers and employees.

Surely, this Court itself, as head of an independent branch of state government, has that same power. Our directives against political activity by court-appointed employees are an exercise of that power. As we observed in *Prohibition of Political Activities by Court–Appointed Employees*, ..., the purpose of such a prohibition is to 'maintain not only the independence, integrity and impartiality of the judicial system but also the appearance of these qualities.' 473 Pa. at 560, 375 A.2d at 1259.

*Dobson*, 517 Pa. at 28, 534 A.2d at 465.

The Claimant argues first that he had just cause to violate the rule against partisan political activity in that he was given permission by President Judge Walsh to run for political office. We reject this argument for two reasons.

■ First, we note that the Board did not make any findings of fact with respect to the question of whether President Judge Walsh granted the permission upon which the Claimant bases this just cause argument. Of course, it is well-settled that the Board is the ultimate fact-finder in unemployment compensation cases. *Peak v. Unemployment Compensation Board of Review*, 509 Pa. 267, 501 A.2d 1383 (1985). On appellate review we cannot properly consider legal arguments which rely on facts not found by the Board.

Second, even if the Board had made the necessary findings of fact to support the Claimant's permission argument we would nevertheless be constrained to reject it. In *Prohibition* the petitioners argued that they were not aware of the Supreme Court's directive prohibiting court-appointed employees from engaging in political activity until the week of May 16, 1977. At that time the petitioners were candidates for public office, the primary election for which was held on May 17, 1977. In dismissing the petitioners' argument that it was too late for them to withdraw from political activity to comply with the memorandum the Su-

preme Court determined that they were not relieved "from compliance once they became aware of the directives." 473 Pa. at 560, 375 A.2d at 1260. We find that the same admonition applies to the case before us. Assuming President Judge Walsh did give the Claimant permission to run for office his duty to comply with the Supreme Court's directive arose no later than his receipt of President Judge Walsh's letter of July 20, 1987, informing him that his political activities violated the directive.

The Claimant also presents a constitutional challenge to the denial of unemployment compensation benefits. Essentially, he argues that the right to engage in political activity is protected by the First Amendment of the United States Constitution. He further argues that it is a fundamental right and as such any restriction of its exercise must be justified by a compelling state interest. He then asks us to conclude that he has been unconstitutionally denied unemployment compensation benefits inasmuch as the Commonwealth has not demonstrated any compelling state interest for the deprivation. We will not so conclude and, in fact, will not reach these questions.

In *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), the United States Supreme Court was faced with a constitutional challenge of the denial by the unemployment compensation authorities of South Carolina to a claimant who was a Seventh-day Adventist. The tenets of the claimant's faith required that she refrain from work on Saturdays because that was her Sabbath. The claimant was denied benefits because she refused to accept work on Saturdays. The Supreme Court held that this could not be considered a disqualifying refusal to accept suitable employment because it violated the claimant's freedom of religion guaranteed by the Free Exercise Clause of the First Amendment. In analyzing the claimant's constitutional argument the Supreme court suggested the following approach:

> If ... the decision of the South Carolina Supreme Court is to withstand appellant's constitutional challenge, it must be either because her disqualification as a beneficiary represents no infringement by the State of her constitutional rights of free exercise, or because any incidental burden on the free exercise of appellant's religion may be justified by a 'compelling state interest in the regulation of a subject within the State's constitutional power to regulate ...' *NAACP v. Button,* 371 U.S. 415, 438, 83 S.Ct. 328, 341, 9 L.Ed.2d 405 [(1963)].

*Id.* 374 U.S. at 403, 83 S.Ct. at 1793.

The Supreme Court's first step, then, was to analyze the question of whether the claimant had demonstrated that the action of the unemployment compensation authorities of South Carolina in any way infringed upon her constitutional rights of free exercise. The Court concluded that there was an infringement. "[T]o condition the availability of benefits upon this appellant's willingness to violate a cardinal principle of her religious faith effectively penalizes the free exercise of her constitutional liberties." *Id.* at 406, 83 S.Ct. at 1795.

■ The "condition" to which the court refers is the requirement that the claimant be available to accept suitable employment. The claimant limited her availability by refusing to accept employment which would require her to work on Saturdays which would violate the tenets of her faith. In *Sherbert* the unemployment compensation authorities' condition to the receipt of benefits required the claimant to choose between violating her faith in order to receive benefits and foregoing eligibility for benefits in order to exercise her faith. The Court concluded that this clearly resulted in an infringement by the unemployment compensation authorities.

The facts in the case before us are clearly distinguishable from those in *Sherbert* and that distinction leads us to a different conclusion, *i.e.,* that the Claimant has failed to

demonstrate that the action of the Pennsylvania unemployment compensation authorities has in any way infringed upon his First Amendment freedoms. The decision to deny benefits to the Claimant was based solely on the conclusion that he had committed willful misconduct in violating an admittedly reasonable and constitutional work rule of his employer. The *denial of benefits* is in no way conditioned upon the Claimant's limitation of his exercise of his constitutional liberties. In *Sherbert* the claimant would have been eligible for benefits had she agreed to limit her right to free exercise, *i.e.*, be willing to accept a job which would require her to work on Saturdays. *See also, Frazee v. Illinois Department of Employment Security,* — U.S. ——, 109 S.Ct. 1514, 103 L.Ed.2d 914 (1989) (claimant refused to accept temporary position which required him to work on his Sabbath, unemployment compensation benefits were denied, held to be an unconstitutional limitation of Free Exercise Clause). In this case the Claimant's receipt of benefits is in no way conditioned *by the unemployment compensation authorities* upon the limitations of exercise of his First Amendment freedoms. That is, the Claimant is ineligible for benefits based on a finding of willful misconduct whether or not he continues to engage in partisan political activity.

We conclude that the Claimant has not demonstrated any infringement of his First Amendment freedoms and accordingly decline to reach step two of the *Sherbert* analysis, *i.e.*, whether the Commonwealth has a compelling state interest to justify its regulation.

We affirm the Board.

## ORDER

NOW, June 12, 1989, the order of the Unemployment Compensation Board of Review at No. B–264227, dated March 9, 1988, is hereby affirmed.