597 A.2d 241

**Carlton BAILEY, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 3, 1991.

Decided Sept. 5, 1991.

Reargument Denied Oct. 24, 1991.

4. **Social Security and Public Welfare** ☞577

Andrew F. Erba, for petitioner.

Maribeth Wilt–Seibert, Asst. Counsel, with her, Clifford F. Blaze, Deputy Chief Counsel, for respondent.

Before SMITH and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

PELLEGRINI, Judge.

Carlton Bailey (Claimant) appeals from an order of the Unemployment Compensation Board of Review (Board) which affirmed the Referee's decision denying him unemployment compensation benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law),[1] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e), for willful misconduct resulting in his discharge from employment.

Claimant was employed by Kill Ltd.—New Jersey Cleaners (Employer), a dry-cleaning business, as a cleaner for two years prior to his discharge. According to the Referee's findings of fact, on July 25, 1990, while at work, Claimant was approached by a terminal supervisor while he was sitting and eating cookies. The terminal supervisor asked Claimant why he was sitting and he responded that he was on his break. Claimant then asked the terminal supervisor why she was inquiring. An argument ensued during which time Claimant allegedly directed abusive profanities towards the terminal supervisor. Claimant was not

---

1. Section 402(e) of the Law provides the following:
   An employee shall be ineligible for compensation for any week in which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is "employment" as defined in this act.

scheduled to work the following two days, but when he reported for work on July 28, 1990, Claimant was told by one of the owners of Kill Ltd. that he was being discharged because the kind of behavior he had exhibited towards the terminal-supervisor would not be tolerated.

Claimant filed a claim for unemployment compensation benefits with the Office of Employment Security (OES). The request was denied on the basis of Section 402(e) of the Law, as a discharge from work due to willful misconduct connected with the job. On appeal, the Referee issued a decision affirming the OES. The Referee concluded that because Claimant had acknowledged that he directed vile and abusive language towards the terminal supervisor and was not justified in his actions, he had displayed a wanton disregard of the standard of behavior the Employer had a right to expect from Claimant as an employee which amounted to willful misconduct. Claimant appealed to the Board, which issued a decision affirming the Referee. Claimant then filed the present appeal.

The issues now before us are whether the Board erred in determining that the Claimant directed abusive profanities towards the terminal supervisor and, if not, whether that conduct constituted willful misconduct.

Where a claimant has been denied benefits under Section 402(e) of the Law, the Employer has the burden of proving the willful misconduct for which the employee was terminated. *Browning–Ferris Industries of Pennsylvania, Inc. v. Unemployment Compensation Board of Review*, 93 Pa.Commonwealth Ct. 460, 501 A.2d 711 (1985). For behavior to constitute willful misconduct, the employee's behavior must evidence (1) the wanton and willful disregard of the employer's interest, (2) the deliberate violation of rules, (3) the disregard of standards of behavior which an employer can rightfully expect from his employee, or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employer's duties and obligations. *Kentucky Fried Chicken of Altoona, Inc. v.*

*Unemployment Compensation Board of Review,* 10 Pa.Commonwealth Ct. 90, 309 A.2d 165 (1973).

The Employer contends that it met its burden of proving that Claimant's behavior amounted to willful misconduct because the Employer admitted into evidence without objection a note written by the terminal supervisor to the owners of Kill, Ltd., specifying the abusive language directed at her by Claimant.[2] Also, Claimant actually testified that he directed abusive language at the terminal supervisor and admitted that he used bad language in his written Summary of Interview form which was also submitted into evidence by the Employer without objection.

Although the Referee determined that the Employer had met its burden of proving that Claimant's conduct amounted to willful misconduct, he did so based on his finding that Claimant had directed vile and abusive language towards the terminal supervisor and had done so without justification. However, the record reveals that Claimant never acknowledged that he directed vile and abusive language towards the terminal supervisor, but only testified that he told her, "[G]et out of my face." (N.T. at 4.) Claimant further testified that one word led to another, but when he was questioned as to the exact words he uttered, he responded, "I can't remember exactly, I can just tell you how the outcome came. I can't remember each word that was carried." (N.T. at 5.) At no time did Claimant testify as to the specific language which he directed at the terminal supervisor, but only acknowledged that he used *abrasive* language. (N.T. at 5.) As such, the Referee had no substantial evidence upon which to make a finding that Claimant had directed abusive language towards the terminal

**2.** The note which was written by the terminal supervisor and given to the owners of Kill, Ltd. stated the following:

Around 6:30 p.m., Carlton Bailey was sitting on a yellow cart in the package express area. I asked him if he was on break. He started shouting all types of profanity such as Fuck you and Bitch. Frank Farrow and Herb Jackson talk to him outside, when you could still hear him call me all types of names.

supervisor, and the Board erred in affirming the Referee's decision on that basis.

███ Regarding the note which the terminal supervisor wrote to the owners of Kill, Ltd., that piece of evidence, which was entered into evidence without objection, was hearsay, because the terminal supervisor did not testify regarding the note, and the note was offered into evidence by the Employer to provide the Referee with proof of the exact language used by Claimant.[3]  Although hearsay evidence admitted into evidence without objection will be given its natural probative effect and may support a finding of the Board if it is corroborated by any competent evidence in the record, a finding of fact based solely on hearsay will not stand.  *Walker v. Unemployment Compensation Board of Review,* 27 Pa.Commonwealth Ct. 522, 367 A.2d 366 (1976). Because Claimant's testimony did not support a finding that he directed abusive language towards the terminal supervisor, the note did not corroborate Claimant's testimony. Therefore, the note, as hearsay evidence standing alone, could not support the Referee's and Board's findings that Claimant directed abusive language towards the terminal supervisor.

███ Regarding the Summary of Interview form, the Employer correctly states that Claimant wrote in that form that he had used bad language,[4] and that admission by Claimant constituted an exception to the hearsay rule.[5]  As such, the Employer argues that the form was competent evidence to support the Referee's and Board's finding that Claimant directed abusive language at the terminal supervi-

3. Hearsay is defined as an out-of-court statement, either oral or written, offered in court for the purpose of proving the truth of the matter contained in the statement.  *Spotts v. Reidell,* 345 Pa.Superior Ct. 37, 497 A.2d 630 (1985).

4. Specifically, Claimant wrote in the Summary of Interview form, "I got hot and used some bad words."

5. *See Wyke v. Ward,* 81 Pa.Commonwealth Ct. 392, 474 A.2d 375 (1984), where this court found that a letter written by the Secretary of Transportation acknowledging that a certain intersection was unsafe was an admission and a well-recognized exception to the hearsay rule.

sor. However, even though the form may be competent evidence, it does not support a finding that Claimant used abusive language. Not only have we determined that the Board incorrectly concluded that Claimant used "abusive" language based on his own testimony, but Claimant merely states in that form that he used "bad words." Bad words in one individual's vocabulary may not be considered bad words in another's vocabulary. Without any explanation by Claimant regarding what the bad words consisted of, we cannot assume that the bad words he used were abusive and amounted to willful misconduct. Consequently, we cannot find that the Summary of Interview form supports the denial of Claimant's benefits.[6]

Because the findings of fact made by the Board are binding on appeal only when the record contains substantial evidence to support those findings, we hold that the Board's findings were not supported by substantial evidence, and, therefore, are not binding on this court. *Norman Ashton Klinger & Associates, P.C. v. Unemployment Compensation Board of Review*, 127 Pa.Commonwealth Ct. 293, 561 A.2d 841 (1989). Accordingly, the decision of the Board denying Claimant unemployment compensation benefits is reversed.

## ORDER

AND NOW, this 5th day of September, 1991, the order of the Unemployment Compensation Board of Review, dated December 24, 1990, No. B–286927, is reversed.

SILVESTRI, Senior Judge, dissenting.

The majority reverses the Unemployment Compensation Board of Review (Board) which affirmed the decision of the referee denying benefits to Carlton Bailey (Bailey) pursuant

6. Because we found that Claimant's conduct did not amount to willful misconduct, we do not reach the issues raised by the Employer as to whether Claimant's use of abusive language was provoked or *de minimis*.

to Section 402(e) of the Unemployment Compensation Law [1] (Act). I would affirm the Board, and respectfully dissent for the following reasons.

Bailey was last employed by Kill Ltd. (employer) [2] as a janitor for two years prior to his discharge. On Wednesday, July 25, 1990, Bailey reported for work. In the course of the day, and consistent with company policy, Bailey took an allotted work break. He was separate and apart from his co-employees and was eating cookies. June Gregory (June), the employer's manager, was in the same proximity as Bailey. June approached Bailey and inquired as to why he was separated from his fellow workers. Bailey responded by shouting vulgar and abusive profanities towards June.

Immediately after the incident, June wrote a memorandum describing the circumstance. She gave the memorandum to Carn and Cathy, [3] the owners of Kill Ltd. The memorandum stated:

7/25

Car [sic] & Cathy:

Around 6:30 pm Carlton Bailey was sitting on a yellow cart in the package express area. I asked him if he was on break. He started shouting all types of profanity such as fuck you and bitch. Frank Farrow and Herb Jackson talk to him outside, when you could still hear him calling me all types of names.

June

Bailey was not scheduled to work on Thursday or Friday. However, when Bailey returned to work on Saturday, July 28, 1990, he learned of his discharge. Before a referee, Bailey testified as to his dismissal as follows:

1. Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e) (willful misconduct).

2. Kill Ltd. is a dry cleaning operation.

3. The record fails to indicate the last names of Carn and Cathy.

C  Carn was not in, he was off and I had my two days. When I saw Carn was Saturday morning. When I came in there was another individual that was hired that was working. That is when he called me in and he said the marriage is over.

. . . . .

C  [H]e could not tolerate me using that abrasive language at one of his supervisors.

Bailey's application for unemployment compensation benefits was denied by the Bureau of Unemployment Compensation Benefits and Allowances.[4] Bailey appealed the denial of benefits to a referee, and testified as follows:

R  So were you on your break?

C  I was on my break.

R  When June approached you?

C  Yes

R  What did June say?

C  First she came over and she said all the guys were sitting there. What are your (sic) doing sitting down. And I said I am on my break why are you bothering me. Sitting by myself having some cookies.

R  Sitting by yourself or everybody around?

C  There is a big room there they have a yellow cart to put the baggage on. I sat over by the lockers on a cart by myself. The other guys on the other side.

R  So what did she say.

C  I said I am on my break why are you bothering me. She knows my break time. I am very systematic. I come in to work a half hour before the hour, I get a cup of coffee.

R  What did she say?

C  She approached me on why was I sitting there. I asked her why was she bothering me, you know I am on my break.

R  And what did she say?

---

**4.** Formerly the Office of Employment Security (OES).

C She told me that she could approach me on anything and for me to answer her and I told her to get out of my face. Then one word led to another.

R Tell me what led to what?

C She came back to me with some words, I came back at her.

R What words?

C You want to hear it?

R Yes.

C I can't remember exactly I can just tell you how the outcome came. I can't remember each word that was carried. I got overheated and I told her I didn't have to stand for this that I was reliable, dependable and why was she bothering me.

R So did Frank have to take you outside?

C No that is a lie.

R (sic) Frank and Herb Jackson heard the noise they came out of the offices into the area which led into the bay where we had the carts and I asked Frank I said why is she bothering me, I do my work, I am on my break. They asked me to go up to the other end of the terminal and cool down.

June's memorandum was admitted into evidence as follows:

R [A]nd finally exhibit ten is a note dated the 25th of July addressed to Carn & Kathy [sic] did you see that?

C I saw that today the first time I saw that.

R Do you have any objection to the documents being made a part of the record?

C No I don't.

R Who are Carn & Kathy [sic]?

C They are the owners of Kill.

The referee affirmed the Bureau's decision and stated in finding of fact # 3 that Bailey engaged in an argument with June in which he directed abusive profanities at her. In denying benefits to Bailey, the referee reasoned as follows:

The claimant here acknowledged that he directed vile and abusive language towards the terminal supervisor on his

last day of work, on June 25, 1990. The claimant has not justified his actions in this regard. His statement "that's the way it came out" is insufficient for that purpose. Accordingly, the claimant displayed a wanton disregard of the standards of behavior an employer has a right to expect of an employee without justification which is misconduct as contemplated by Section 402(e) of the Law noted above.

Bailey appealed the referee's affirmance of the Bureau's decision to the Board, who, in affirming, merely attached the referee's decision to its decision. Our scope of review of Board determinations is limited to determining whether the Board committed an error of law, violated constitutional rights, or made findings of fact which are unsupported by substantial evidence. *Emery Worldwide v. Unemployment Compensation Board of Review*, 115 Pa.Commonwealth Ct. 554, 540 A.2d 988 (1988).

Section 402(e) of the Act provides that a claimant shall be ineligible for compensation for discharge or temporary suspension from work for willful misconduct. 43 P.S. § 802(e). Willful misconduct is not defined under the Act; however, it has been interpreted to mean an act of wanton or willful disregard of the employer's interests, a deliberate violation of the employer's rules, a disregard of the standards of behavior which the employer has a right to expect of an employee, or negligence indicating an intentional disregard of the employer's interests or of the employee's duties and obligations to the employer. *Giglio v. Unemployment Compensation Board of Review*, 126 Pa.Commonwealth Ct. 471, 560 A.2d 271 (1989); *PMA Reinsurance Corp. v. Unemployment Compensation Board of Review*, 126 Pa.Commonwealth Ct. 94, 558 A.2d 623 (1989).

This Court has previously stated that the employer bears the burden of establishing that an employee has engaged in disqualifying willful misconduct. *Bignell v. Unemployment Compensation Board of Review*, 61 Pa.Commonwealth Ct. 568, 434 A.2d 869 (1981). Despite Bailey's contentions, we agree with the Board that the employer has

met this burden to support a finding of disqualifying misconduct and subsequent denial of benefits.

First, Bailey alleges the Board erred in finding that abusive profanities were uttered because no testimony was given as to the exact language used. This contention is erroneous. June's memorandum that illustrated the use of Bailey's profanity was properly entered into evidence, and provides sufficient proof of Bailey's profane and abusive language.

Second, Bailey alleges that Section 402(e) is violated only when the language is considered abusive or vulgar in modern parlance. 43 P.S. § 802(e). In support of this contention, Bailey cites *Cundiff v. Unemployment Compensation Board of Review*, 88 Pa.Commonwealth Ct. 272, 489 A.2d 948 (1985), which granted benefits to Cundiff.

The facts of *Cundiff* reveal that Rosemarie Cundiff was employed as a nurse's aide. Her duties included attending to patients from 7 to 8 a.m., and feeding patients starting at 8 a.m. One morning, Cundiff was tending to an invalid patient in the bathing room. At 8 a.m., Cundiff's supervisor told her to begin feeding patients. Cundiff replied, "Get off my back, so what, there are other people out there that can feed patients, I don't have to do that." *Cundiff*, 88 Pa.Commonwealth Ct. at 274, 489 A.2d at 950. Cundiff was then discharged for insubordination. Bailey's faith in *Cundiff* is misplaced. *Cundiff* contains no such vulgarity or profanity to examine in light of a modern parlance standard to reveal if the language used is abusive. Moreover, it is naive and erroneous to suggest that such words as "fuck you" and "bitch" are not vulgar nor abusive in modern parlance. Such is particularly true when uttered in an employment setting and especially at a female manager. Further, there is no trace of evidence to suggest that vulgarity was common parlance on the job site. *See Bush v. Unemployment Compensation Board of Review*, 48 Pa.Commonwealth Ct. 291, 409 A.2d 523 (1980).

This Court has previously established that vulgarity, even in a single instance, is willful misconduct if unjustified,

unprovoked, unnecessary, or uncalled for under the circumstances. *Dodson v. Unemployment Compensation Board of Review*, 63 Pa.Commonwealth Ct. 245, 437 A.2d 1080 (1981). However, vulgarity is not willful misconduct if there is justifiable provocation and the language is deemed *de minimus. Id.*

Bailey's third contention is that there was sufficient provocation to justify his actions. In support of this contention, Bailey cites *Longacre, Inc. v. Unemployment Compensation Board of Review*, 12 Pa.Commonwealth Ct. 176, 316 A.2d 110 (1974). Bailey's faith in *Longacre* is wholly misplaced. The facts of *Longacre* reveal that Wilma Westfall worked as a roll packer in Longacre, Inc. While she was at work, and immediately prior to an allotted break, an assistant foreman and three other female co-employees had a conversation about a particular work assignment. The assistant foreman shouted the assignment to the female employees as they began their breaks. He told them they would be discharged if they did not perform the assignment. The assistant foreman then grabbed Westfall and said the assignment included her. She told the assistant foreman to "go to hell." *Longacre*, 12 Pa.Commonwealth Ct. at 178, 316 A.2d at 111. She was subsequently terminated. The Board reversed the decision of the referee and granted benefits. This Court affirmed noting that Westfall's remark was uttered only after the assistant foreman took her by the arm to stop her from taking her break. Her language was justified in light of an offensive touching by the assistant foreman.

Bailey, however, did not testify as to any offensive touching, nor was he ordered to work through his break. The question asked by June was merely informational, non-provocational and did not rise beyond a *de minimis* level. Thus, his profane and abusive language was not justified nor excused.

This Court has previously established that findings by the Board are conclusive on appeal if they are supported by substantial evidence from the record as a whole. *Taylor v.*

*Unemployment Compensation Board of Review,* 474 Pa. 351, 378 A.2d 829 (1977). We believe the record adequately supports the Board's finding that Bailey engaged in willful misconduct.

In opposition to Bailey's claim that the language used was not profane, the Board here relies upon June's memorandum which was admitted into evidence. Because Bailey was the only party to testify before the referee, the Board argues in its brief June's memorandum is an exception to the hearsay rule. Normally, because the hearsay issue was not properly raised by Bailey before the referee or the Board, it is waived, and cannot be raised for the first time on appeal. Pa.R.A.P. 302. However, because the Board interjected the hearsay argument in its brief in support of its position, and Bailey filed a reply brief thereto, the issue is properly before us for review.

This Court has previously established guidelines regarding the admissibility of hearsay evidence. Where such evidence is properly objected to, it is not competent evidence to support a finding of the Board. *Walker v. Unemployment Compensation Board of Review,* 27 Pa.Commonwealth Ct. 522, 527, 367 A.2d 366, 370 (1976). However, hearsay evidence admitted without objection, will be given its natural probative effect and may support a finding of the Board if it is corroborated by any competent evidence in the record; but a finding of fact based solely on hearsay will not stand. *Id.*

June stated in her memorandum that Bailey used vulgar language. While such a statement is hearsay, it was admitted into evidence without objection, and will support a finding of fact if corroborated by competent evidence. Corroboration is present in Bailey's own admission against interest when he professed in his Summary of Interview [5] that he "got hot and used some bad words." Such admission against interest was also admitted without objection, and thus is an exception to the hearsay rule, which provides

5. The Summary of Interview was admitted into evidence without objection as Exhibit 7.

308

corroborative and competent evidence sufficient to support a conclusion that Bailey directed abusive and profane language towards June.[6]

6. It is unnecessary that the finding of willful misconduct be supported by substantial evidence absent the hearsay, because if it were, the willful misconduct would be based upon those independent circumstances, and the *Walker* rule would be without effect. *Socash v. Unemployment Compensation Board of Review,* 69 Pa.Commonwealth Ct. 516, 451 A.2d 1051 (1982).