# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

WellSpan Medical Group,     :
                                :

              Petitioner    :
                                :

                 v.          :  No. 1348 C.D. 2018
                                :  Argued:  April 11, 2019

Unemployment Compensation  :
Board of Review,            :

                                :

           Respondent :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge (P.)
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge

<u>OPINION NOT REPORTED</u>


MEMORANDUM OPINION
BY JUDGE WOJCIK                            FILED:  May 30, 2019


        Wellspan Medical Group (Employer) petitions for review of the September 13, 2018 order of the Unemployment Compensation Board of Review (Board) that affirmed a referee's determination and held that Brian E. Michael, M.D., (Claimant) is not ineligible for benefits under Section 402(e) of the Unemployment Compensation Law (Law).[1]  We affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).  Section 402(e) provides that an employee shall be ineligible for compensation for any week in which his unemployment is due to his discharge from work for willful misconduct connected to his work.

While the Law does not define the term willful misconduct, our courts have defined it as: an act of wanton or willful disregard for the employer's interests; a deliberate violation of the employer's rules; disregard for standards of behavior that the employer can rightfully expect of **(Footnote continued on next page…)**

Claimant was employed full-time by Employer as an endocrinologist from April 12, 2010, until March 27, 2017,[2] when Employer terminated Claimant's employment for unprofessional behavior. Reproduced Record (R.R.) at 31a-32a. Employer's March 27, 2017 termination letter asserts that Claimant had a history of inappropriate behavior, dating back to the "first and final warning" issued to Claimant in 2011 for unprofessional behavior. R.R. at 31a. In the letter, Employer also states that it had previously warned Claimant about unprofessional conduct toward an IT staff member in 2014 and inappropriate actions concerning a patient's record in 2016. *Id*. The termination letter in relevant part further reads:

> Now we have yet another complaint about your behavior. A patient made us aware that you made disparaging comments about your perceived grievances against [Employer]. In response to a patient's question regarding a delay in service, you reportedly told the patient, "[Employer] does not pay enough for proper staffing, so this is what you get." Statements such as this are harmful to [Employer]'s reputation and cause disruption to its business operations. You also expressed similar sentiments at a recent vision exercise.
>
> We have tried to counsel you about your unprofessional, degrading and frequently profane comments about your [Employer] and your colleagues. Despite our many efforts, you persist in defaming [Employer], and your

**(continued…)**

an employee; or negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations. *Klampfer v. Unemployment Compensation Board of Review*, 182 A.3d 495, 499 (Pa. Cmwlth. 2018).

[2] Claimant was relieved of his patient care duties effective March 27, 2017, but he continued to receive payment of his salary, compensation, and benefits accrued until June 25, 2017. Reproduced Record (R.R.) 31a.

colleagues, including making these statements to patients. This creates a negative work environment and diminishes patient trust in our organization.

R.R. at 31a-32a.

The local service center determined that Claimant was not ineligible for unemployment benefits under Section 402(e) of the Law. Employer appealed and a hearing was held before the referee.

At the March 6, 2018 hearing, Jason Elliott, Employer's vice-president of human resources, testified that Employer's termination letter accurately described the reasons for Claimant's discharge, adding that Claimant was terminated for "repeated highly inappropriate, unprofessional interactions with different members of the staff and patients." R.R. at 54a. Mr. Elliott recognized that the termination letter did not specifically reference which of Employer's policies Claimant allegedly violated. R.R. at 57a-58a. Mr. Elliott stated that he was not present for Claimant's termination meeting, but he noted that he had spoken with Claimant's supervisors in the past about Employer's concerns with Claimant's conduct. R.R. at 60a.

Claimant acknowledged that Employer issued him a warning for inappropriate behavior in 2011, but he denied that unprofessional conduct was the reason Employer discharged him in 2017. R.R. at 61a-63a, 78a. Claimant admitted that he spoke with a patient about her concerns with Employer, but he testified that he never told the patient, "[Employer] does not pay enough for proper staffing so this is what you get."[3] R.R. at 75a, 77a. As to an overheard remark

---

[3] Claimant testified that the patient in question had been diagnosed with cancer, which required her to come in for an extra visit because such news should not be delivered over the phone. R.R. at 76a. Claimant stated that the patient expressed to Employer her dissatisfaction with receiving delayed treatment concerning her diagnosis and explained that it was difficult for **(Footnote continued on next page…)**

comparing the medical services from a certain health care provider to what someone might "get from being in someplace like Buckswanna,"[4] Claimant testified that he was referencing Employer's competitor, Geisinger, and not Employer. R.R. at 78a. Claimant admitted to making comments at the vision event that Employer's "closest competitor in wages was Walmart," but he said this statement was taken out of context. R.R. at 79a. Claimant also testified that his alleged comments at the vision event were not addressed in the termination meeting with his supervisors. R.R. at 78a.

The referee found that Claimant was aware that Employer's policy required employees to treat others with respect and considered unprofessional conduct toward staff or patients to be a terminable offense. The referee found that since 2011, Employer issued Claimant several warnings concerning his behavior, with notice that further misconduct would result in his discharge. While she did not find Claimant's testimony entirely credible, the referee determined that Claimant's credibility issues did not negate Employer's failure to provide competent, first-hand evidence to support a disqualification of unemployment compensation benefits. By a March 14, 2018 order, the referee upheld the local service center's decision that Employer failed to satisfy its burden of proving willful misconduct under Section 402(e) of the Law.

---

**(continued…)**

her to schedule an extra visit. *Id.* Claimant said that the patient shared the nature of that conversation with him and made certain that Claimant knew that she was not upset with him. *Id.*

[4] The hearing transcript references Claimant's "Buckswanna" remarks, but in other filed documents, is alleged to have made a comparison to "Botswana." *See* Employer's 4/20/2018 Brief at 1; Employer's 6/14/2018 Request to Reopen Hearing; Claimant's 6/21/2018 Objection to Employer's Request to Reopen Hearing.

4

Employer appealed to the Board, arguing that it issued Claimant numerous warnings for unprofessional behavior and comments during Claimant's seven years of employment. Employer stated that it received complaints concerning Claimant's behavior, such as Claimant's inappropriate comments to a patient and unprofessional sentiments about Employer at an Employer-sponsored vision event. Employer averred that Claimant was discharged because his behavior constituted a deliberate violation of its clearly established standards of conduct. Employer also asked the Board to reopen the record[5] in order to introduce Claimant's responses to Employer's interrogatories as evidence that Claimant made inaccurate statements during the hearing.[6] Employer argued that Claimant's

_____

[5] Employer requested that the Board reopen the *hearing*; however, because Employer attended the hearing, its proper remedy is not available under Section 101.24(c) of the Board's regulations, 34 Pa. Code §101.24(c). Instead, because Employer claims that it did not have access to necessary evidence at the time of the hearing, its request could be construed as a request to reopen the *record* under Section 101.104 of the Board's regulations, 34 Pa. Code §101.104.

[6] At the March 6, 2018 hearing, Claimant testified that he made the "Buckswanna"/"Botswana" comment in reference to Employer's competitor, Geisinger. However, Claimant's interrogatory answers, which were submitted in the months following the referee's hearing, revealed that his testimony about this comment was not entirely accurate. In relevant part, Employer's interrogatory and Claimant's answer are as follows:

> **INTERROGATORY NO. 17:**
> Identify all persons that were present when you made the comment that the care provided by a certain healthcare provider is "what you would get from being someplace like Botswana," and to whom you were referring.
>
> **ANSWER:**
> During my [unemployment compensation] hearing, I believed that [Employer] was referring to a different meeting where I commented on Geisinger's care. Based on my review of [Employer's] documents, I now remember that I made a statement,

**(Footnote continued on next page…)**

admission to making the vision event comments satisfied its burden of proving Claimant's willful misconduct under Section 402(e) of the Law.

By its September 13, 2018 decision, the Board denied Employer's request to reopen the record. The Board found that Employer failed to demonstrate that Claimant's interrogatories were not available to Employer at the time of the hearing. Board 9/13/18 Opinion at 1. However, in its brief before this Court, the Board acknowledges that this information was only received after the referee's hearing. Board's Brief, 1/28/2019, at 15 n.3. Relying on *Procito v. Unemployment Compensation Board of Review*, 945 A.2d 261, 266 (Pa. Cmwlth. 2008), the Board emphasizes that this Court may affirm the tribunal below on different grounds if it agrees with the result reached below. *Id.*

The Board concluded that Employer had only offered Claimant's interrogatory answers as evidence and had not established competent, first-hand evidence that Claimant violated its policies. Accordingly, the Board affirmed the referee's determination and adopted the referee's findings of fact and conclusions of law. Employer appeals to this Court.[7]

---

**(continued…)**

> that is similar to but not the one quoted above, at a vision meeting regarding the treatment my wife received at [Employer's] York [location]."

R.R. at 132a.

[7] Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law, and whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704; *Adams v. Unemployment Compensation Board of Review*, 56 A.3d 76, 78 n.3 (Pa. Cmwlth. 2012).

An employer bears the burden of proving willful misconduct. *Kelly v. Unemployment Compensation Board of Review,* 747 A.2d 436, 438 (Pa. Cmwlth. 2000). Where the allegation of willful misconduct is based on a violation of the employer's work rule, the employer must show the existence of a reasonable work rule and the claimant's violation of the rule. *Brown v. Unemployment Compensation Board of Review*, 49 A.3d 933, 937 (Pa. Cmwlth. 2012). Once the employer meets its burden, the burden shifts to the claimant to establish good cause for his conduct. *Bowers v. Unemployment Compensation Board of Review,* 165 A.3d 49, 52 n.5 (Pa. Cmwlth. 2017).

Employer argues that it discharged Claimant for making inappropriate comments to a patient *and* for making disparaging remarks about Employer's medical services at its vision event. However, the Board found that Employer discharged Claimant solely for making inappropriate comments to a patient and there is substantial evidence to support the Board's findings.[8]

An employer cannot rely solely on a claimant's history of inappropriate behavior to satisfy its burden of proving the claimant was discharged for willful misconduct. *Panaro v. Unemployment Compensation Board of Review*,

---

[8] In unemployment compensation cases, the Board, as factfinder, is empowered to determine the credibility of witnesses and resolve conflicts in evidence. *Kelly v. Unemployment Compensation Board of Review,* 776 A.2d 331, 336 (Pa. Cmwlth. 2001). The Board's findings are binding and conclusive on appeal if the record, when examined as a whole, is supported by substantial evidence. *Id.* Substantial evidence is defined as "such relevant evidence which a reasonable mind would accept as adequate to support a conclusion." *Cambria County Transit Authority ("Cam Tran") v. Unemployment Compensation Board of Review*, 201 A.3d 941, 947 (Pa. Cmwlth. 2019). We view the record in the light most favorable to the party prevailing before the Board and afford that party the benefit of all reasonable and logical inferences that can be drawn from the evidence to determine if substantial evidence exists. *Indiana University of Pennsylvania, State System of Higher Education v. Unemployment Compensation Board of Review,* 202 A.3d 195, 202 (Pa. Cmwlth. 2019).

413 A.2d 772, 774 (Pa. Cmwlth. 1980) (holding that where alleged misconduct occurred at a time too remote from the date of the claimant's discharge, the employer failed to prove that the misconduct was the actual reason for the claimant's discharge). We have held that once a history of the claimant's misconduct has been established, an employer is not required to rely only on the final incident of misbehavior to satisfy its burden of proving willful misconduct. *Grand Sport Auto Body v. Unemployment Compensation Board of Review*, 55 A.3d 186 (Pa. Cmwlth. 2012) (holding that a claimant's history of absenteeism and tardiness rose to the level of willful misconduct under Section 402(e) of the Law, even when the claimant's last absence was justified). However, the employer must nevertheless prove that the claimant's final act of misconduct did, in fact, occur. *Lee v. Unemployment Compensation Board of Review*, 415 A.2d 456, 457 (Pa. Cmwlth. 1980) (holding that the testimony of the employer's witness, who admittedly did not have firsthand knowledge of the alleged misconduct, was clearly hearsay and, without corroboration from the record, could not support a finding of fact that the claimant was discharged for willful misconduct).

Here, the Board found that both Claimant's and Employer's questionnaire responses cite Claimant's comments to a patient as the sole reason for his discharge. Claimant's questionnaire states that he was discharged for violating a rule, but explains, "[t]he patient made a complaint against [Employer], not against me personally. I didn't say those exact words. . . . I did talk to this patient who has cancer about why the services were coming to her so slowly." R.R. at 38a. Employer's questionnaire response, specifically states that Claimant was discharged for "inappropriate [and] unprofessional behavior," because "[a]

8

patient made the supervisor aware that [Claimant] made disparaging remarks about his perceived grievance against [Employer]." R.R. at 15a.

There is no dispute that Employer's policies prohibited unprofessional conduct; that Claimant was aware of said policies; or that Employer issued Claimant several warnings about his unprofessional interactions with others during Claimant's seven years of employment. But, Employer offers no first-hand evidence to show that Claimant committed the act underlying his discharge: making inappropriate comments to a patient. Employer's only witness, Mr. Elliott, had no direct knowledge of the alleged conduct. Rather, Mr. Elliott limited his testimony to identifying Employer's policies, recounting Claimant's prior warnings, and discussing the termination letter. This evidence, without more, is insufficient to establish that Claimant conducted himself unprofessionally when speaking with a patient. *Bailey v. Unemployment Compensation Board of Review*, 597 A.2d 241, 243-44 (Pa. Cmwlth. 1991) (holding that hearsay evidence, standing alone, will not support a finding of fact). Employer failed to establish that Claimant committed the act of willful misconduct that precipitated his discharge under Section 402(e) of the Law.

Finally, Employer contends that the Board's denial of its request to reopen the record was an abuse of discretion because evidence that Claimant made inappropriate remarks about Employer at the vision event was not available until after the hearing when Claimant submitted his interrogatory answers. Employer contends that Claimant's admission constitutes first-hand evidence to satisfy its burden of proof. *See Miller v. Unemployment Compensation Board of Review*, 445 A.2d 1372, 1373-74 (Pa. Cmwlth. 1982) (holding that an employee's admission,

9

combined with hearsay, supported a referee's finding that the employee had committed willful misconduct).

Pursuant to Section 101.104(c) of the Board's regulations, the Board has discretion to:

> (c) [A]ffirm, modify or reverse the decision of the referee on the basis of the evidence previously submitted in the case, or the Board may direct the taking of additional evidence, if in the opinion of the Board, the previously established record is not sufficiently complete and adequate to enable the Board to render an appropriate decision. The further appeal shall be allowed and additional evidence required in any of the following circumstances:
>
> (1) Whenever the further appeal involves a material point on which the record below is silent or incomplete or appears to be erroneous.

34 Pa. Code §101.104(c)(1). In *Fisher v. Unemployment Compensation Board of Review*, 696 A.2d 895, 897-98 (Pa. Cmwlth. 1997), we held that the denial of the claimants' request for remand was an abuse of discretion because the Board's decision to find the claimants financially ineligible for benefits "rested squarely on the absence of the very same evidence that [the c]laimants requested to introduce on remand." Unlike the claimants in *Fisher*, Claimant's admission to making unprofessional comments about Employer at the vision event does not relate to the asserted reason for Claimant's discharge. The Board's denial of Claimant's request was a proper exercise of its discretion.

Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

WellSpan Medical Group,     :
     :
     Petitioner     :
     :
     v.     : No. 1348 C.D. 2018
     :
Unemployment Compensation     :
Board of Review,     :
     :
     Respondent :

# **O R D E R**

AND NOW, this 30th day of May, 2019, the order of the Unemployment Compensation Board of Review, dated September 13, 2018, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge