# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Tracie A. Kerns, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1069 C.D. 2015 |
| | : | |
| Unemployment Compensation | : | Submitted: October 23, 2015 |
| Board of Review, | : | |
| | : | |
| Respondent | : | |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                    HONORABLE MARY HANNAH LEAVITT, Judge[1]
                    HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**                    **FILED:  February 19, 2016**

Tracie A. Kerns (Claimant) petitions for review of the Order of the Unemployment Compensation (UC) Board of Review (Board) finding Claimant ineligible for UC benefits pursuant to Section 402(e) of the UC Law[2] (Law) because she engaged in willful misconduct related to her work.  On appeal, Claimant argues that the Board erred in finding her ineligible for UC benefits

---

[1] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(e) (providing, in relevant part, that an employee is ineligible for UC benefits for any week the employee's "unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work").

because: it impermissibly relied upon objected-to hearsay evidence to find that Claimant engaged in willful misconduct; the evidence establishes that, at most, Claimant made an unintentional mistake; and it allowed Invision Human Services (Employer) to assert a reason for Claimant's discharge not previously asserted. Discerning no error, we affirm.

Claimant worked full-time for Employer as a residential counselor from October 24, 2011 until January 28, 2015, when she was discharged for not following Employer's protocols for a client (Client) and lying to her supervisor regarding an outing with Client. (Board Decision, Findings of Fact (FOF) ¶¶ 1, 14.) Claimant filed an application for UC benefits, which the Local Service Center denied. Claimant appealed, and the matter was assigned to a Referee for a hearing. Both Claimant and Employer were represented by counsel. Employer presented the testimony of Cheryl Travis, Employer's Regional Human Resources Manager, and Wanda Colon, a Program Supervisor, and Claimant offered her own testimony.

Ms. Travis testified that Claimant was discharged for insubordination, which she described as taking Client, who was not Claimant's regular client, "on an outing and lied about it, where food was served . . . and she did not follow the protocol" regarding Client's food intake. (Hr'g Tr. at 8, 12, R.R. at 11a, 15a.) Claimant objected to Ms. Travis' testimony on hearsay grounds, which the Referee overruled to "allow . . . the party to develop the record, as to why we're here today." (Hr'g Tr. at 8, R.R. at 11a.) Subsequently, Claimant's counsel asked why Claimant was fired, and Ms. Travis answered that "[s]he was fired for taking [Client] to a place, where food was served without protocols in place, without completing the proper paperwork, and . . . then when confronted by her supervisor, directly lying to her about it." (Hr'g Tr. at 10-11, R.R. at 13a-14a.) Ms. Travis

2

also described Client's medical condition, Prader Willi Syndrome, and why it was crucial for Client's food plan to be strictly followed.[3] Ms. Travis acknowledged that she did not speak directly with Claimant regarding this issue, but stated that Claimant would have been aware of and trained in Employer's policies.

Ms. Colon testified that she was Claimant's supervisor and that, on January 22, 2015, Client came to her office and told her that, in December 2014, Claimant had taken her to the house of an ex-employee of Employer, there was food and alcohol served there, and Client ate food that was not on her program. Claimant raised a hearsay objection to this testimony, which the Referee partially overruled, "allow[ing] the testimony for the employer to identify how they became aware of the alleged incident that caused the investigation, [and] only for that purpose." (Hr'g Tr. at 13, R.R. at 16a.) Based on Client's report, Ms. Colon called Claimant and asked if she had taken Client to ex-employee's house on the day in question and Claimant stated that she had not. Ms. Colon stated that Claimant never contacted her to indicate that Claimant had been mistaken and that she had taken Client to the ex-employee's house.

Ms. Colon also described Client's medical condition, the importance of Client eating only what was on Client's approved program, and described Client's Individualized Support Plan (ISP) that included a calorie restriction. Claimant objected to the description of the ISP on the basis that the testimony was based on a written document that Employer did not present and, therefore, hearsay. Ms.

---

[3] Prader Willi Syndrome is a brain disorder that causes an individual not to metabolize food normally causing, *inter alia*, rapid weight gain and the inability to recognize that the individual is full which can result in the individual eating until they become ill or die. (Hr'g Tr. at 9, 14, R.R. at 12a, 17a.) Client's kitchen is kept locked to prevent Client from having access to food and, when Client goes on an outing where food may be present, a plan is required to keep Client safe around the food. (Hr'g Tr. at 9, 14, R.R. at 12a, 17a.)

Colon indicated that it would have violated Client's rights to present the document and that, had she been aware that Claimant was going to want a copy of the plan, she would have brought a redacted version. The Referee overruled the objection because, as a Program Supervisor, "Ms. Colon . . . has . . . credibly established that she's well aware of the client's . . . required program." (Hr'g Tr. at 15, R.R. at 18a.) Claimant's counsel then asked Ms. Colon specific questions about Client's ISP, and Ms. Colon testified that Client had "[a] 1,000 calories per day" restriction and that rice, which Client ate at ex-employee's house, was on Client's "restricted food list." (Hr'g Tr. at 19, R.R. at 22a.) Ms. Colon explained that Claimant had worked with Client in the past, she had not trained Claimant on Client's ISP, and Claimant did not contact her on that day to question the protocol regarding changing Client's food plan or express confusion regarding whether Client could be taken to a place where food was served. Ms. Colon further indicated that Employer required a daily note regarding every activity or place an employee took a client and that, on the date in question, Client's daily note did not reflect the visit to ex-employee's house or the deviation from Client's food plan.

Claimant testified that she was trained on Client's ISP in 2012 or 2013 and that she had worked with Client six or eight times. According to Claimant, she took Client to the mall, Client asked to go to ex-employee's house, and Claimant took her there. She stated that, while there, ex-employee asked if Client had eaten dinner yet and offered Client some food, which Claimant thought was better for Client than what was planned for Client's dinner. Therefore, Claimant did not believe that she violated Client's food plan. Claimant, however, testified that she could not independently recall what Client ate there. Claimant acknowledged that she was aware that Client was on a restricted calorie diet plan, she had to obtain a

4

waiver from a clinician or program before giving Client food that was not on Client's approved food plan, she did not do so, and she was required to provide a daily note to Employer explaining all the places Client had been and what they had done. Claimant admitted that she told Ms. Colon that she had not taken Client to ex-employee's house, but explained that she had forgotten about going there and about Client eating something off-plan. When Claimant later remembered, she did not contact Employer because she believed she would be brought in to have a meeting with Employer before she was disciplined.

The Referee found that Employer met its burden of proving that Claimant engaged in willful misconduct, and Claimant did not have good cause for her actions. (Referee Decision at 2.) Therefore, the Referee found Claimant ineligible for UC benefits. Claimant appealed to the Board. After reviewing the record, the Board resolved the conflicts of testimony in Employer's favor and found that testimony credible. The Board made the following findings of fact:

1. The claimant was last employed as a full-time residential counselor by Invision Human Services at a final rate of $12.63 per hour. The claimant began employment on October 24, 2011, and her last day of work was January 28, 2015.

2. In December 2014, the claimant was working with a client that had Prader Willi Syndrome, which meant that the client had strict dietary restrictions due to the potential that she may eat herself to death.

3. The client had a strict 1,000 calorie per day diet and could eat something off her specific food plan if authorized by a clinician or supervisor.

4. The claimant was aware that she needed a waiver from a clinician or supervisor prior to the client eating something off the food plan.

5

5. The claimant had taken the client to the mall and then to an ex-employee's house.

6. The client had consumed food at the ex-employee's house.

7. The claimant did not ask a clinician or a supervisor if the [client] could eat anything off the food plan.

8. The claimant was required to maintain a daily note of what occurred with the client.

9. The claimant listed in the daily note that she had taken the client to the mall but did not state that the client was taken to the ex-employee's house.

10. The claimant did not indicate to the employer that the client had eaten anything off her food plan.

11. On January 22, 2015, an employee[4] had reported to the employer that the claimant had taken the client to the ex-employee's house in December 2014.

12. The employer's program supervisor called the claimant and asked if she had taken the client to the ex-employee's house at any point in time.

13. The claimant stated that at no point had she ever visited the ex-employee's house with the client.

14. The employer discharged the claimant for, among other things, lying to her supervisor and taking the client to a place where food was served without protocols and proper paperwork.

(FOF ¶¶ 1-14.)

The Board found "that the claimant deliberately and intentionally lied to the program supervisor and did not follow protocol" and that Employer met its burden of establishing that Claimant's actions constituted willful misconduct. (Board

---

[4] As described above, it appears that Client, and not an employee, reported the incident to Ms. Colon.

6

Decision at 3.) The Board did not credit Claimant's explanations that she forgot and did not believe she was violating Client's food plan. Therefore, it concluded that Claimant did not establish good cause for her actions. Having concluded that Employer established that one of the reasons given for Claimant's discharge was willful misconduct, the Board did not address the other reasons Employer provided. Accordingly, the Board affirmed the Referee's Decision. Claimant now petitions this Court for review.[5]

On appeal, Claimant argues that the Board erred because: (1) it relied on objected-to hearsay evidence to find her ineligible for benefits; (2) her actions were not intentional or willful but, at most, a mistake; and (3) it did not rely upon the reason Employer initially asserted for Claimant's discharge, insubordination, but upon the after-asserted reason that Claimant lied to find that Claimant committed willful misconduct.

We first address Claimant's assertion that Ms. Travis initially testified that Claimant was discharged for insubordination and only later indicated that Claimant

---

[5] "Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." Johns v. Unemployment Compensation Board of Review, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth.), petition for allowance of appeal denied, 97 A.3d 746 (Pa. 2014). "The Board's findings are conclusive on appeal so long as the record, when viewed in its entirety, contains substantial evidence to support the findings." Western and Southern Life Insurance Company v. Unemployment Compensation Board of Review, 913 A.2d 331, 334 n.2 (Pa. Cmwlth. 2006). Substantial evidence is "such relevant evidence which a reasonable mind would accept as adequate to support a conclusion." Id. This Court is bound "'to examine the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony'" to determine if substantial evidence exists for the Board's findings. United States Banknote Company v. Unemployment Compensation Board of Review, 575 A.2d 673, 674 (Pa. Cmwlth. 1990) (quoting Taylor v. Unemployment Compensation Board of Review, 378 A.2d 829, 831 (Pa. 1977)).

was also discharged for lying. Claimant argues that the Board should not have relied on this after-asserted basis for Claimant's discharge to find Claimant ineligible for UC benefits.

However, a review of the hearing transcript reveals that Ms. Travis described Claimant's insubordination as taking Client to a place where there was off-program food present, allowing Client to eat that food, and then lying about it. (Hr'g Tr. at 8-9, R.R. at 11a-12a.) In fact, when asked by Claimant's counsel why Claimant was fired, Ms. Travis answered that Claimant "was fired for taking [Client] to a place, where food was served without protocols in place, without completing the proper paperwork, and . . . then when confronted by her supervisor, directly lying to her about it." (Hr'g Tr. at 10-11, R.R. at 13a-14a.) We conclude that Employer did not alter its basis for discharging Claimant, as suggested by Claimant, but considered Claimant's dishonesty to be a part of the "insubordination" Ms. Travis gave as the overall reason for Claimant's discharge.

Claimant next argues that the Board erred and violated her due process rights in finding her ineligible because it relied upon objected-to hearsay in the form of Ms. Colon's testimony regarding statements made by Client, as well as what was contained in Client's ISP. Claimant asserts that the Referee overruled her objections with legally erroneous justifications, none of which are legal bases for accepting hearsay as competent evidence.

"Hearsay is defined as an out-of-court statement, either oral or written, offered in court for the purpose of proving the truth of the matter contained in the statement." Bailey v. Unemployment Compensation Board of Review, 597 A.2d 241, 243 n.3 (Pa. Cmwlth. 1991). "Hearsay evidence, [p]roperly objected to, is not competent evidence to support a finding," but "[h]earsay evidence, [a]dmitted

8

without objection, will be given its natural probative effect and may support a finding of the Board, [i]f it is corroborated by any competent evidence in the record." Walker v. Unemployment Compensation Board of Review, 367 A.2d 366, 370 (Pa. Cmwlth. 1976). "[A] finding of fact based [s]olely on hearsay will not stand." Id.

Here, Claimant objects primarily to Ms. Colon's testimony regarding what occurred with Client on the date in question and what Client's ISP required. Ms. Colon's description of what occurred was based on what Client told her and, had this testimony been admitted for its truth, it would be hearsay to which Claimant objected. However, that testimony was not admitted for its truth, but to describe why Employer began its investigation. (Hr'g Tr. at 13, R.R. at 16a.) It was during this investigation that Ms. Colon asked Claimant about that day and Claimant told Ms. Colon that she had never taken Client to ex-employee's house. Claimant's own testimony reveals that, after taking Client to the mall, Claimant took Client to ex-employee's house, food was present, and she permitted Client to eat food that was not on Client's plan. (Hr'g Tr. at 23-24, R.R. at 26a-27a.) Claimant further admitted that she denied taking Client to ex-employee's house when asked by Ms. Colon. (Hr'g Tr. at 24-25, R.R. at 27a-28a.) Although Claimant explained that this was because she had forgotten about the visit and, once she remembered she was going to tell Employer in the interview she assumed would occur before she was disciplined, (Hr'g Tr. at 25-26, R.R. at 28a-29a), the Board did not credit Claimant's testimony in that regard. "As the ultimate factfinder, the Board determines the credibility of witnesses and the weight to be assigned to the evidence." Tapco, Inc. v. Unemployment Compensation Board of Review, 650 A.2d 1106, 1108 (Pa. Cmwlth. 1994). The fact "that [a party] might view the

9

testimony differently than the Board, is not grounds for reversal if substantial evidence supports the Board's findings." Id. at 1109. Accordingly, the Board's findings regarding what occurred that day are supported by non-hearsay evidence.

The testimony regarding Employer's protocols and Client's ISP is a closer question as it does appear that Ms. Colon was describing, on direct, Employer's food protocols and the contents of the ISP, which was based on the contents of written documents that Employer did not separately present at the hearing, for their truth. Thus, if the Board's findings were based solely on that testimony, they would be unsupported by competent evidence. However, a careful review of the record reveals that the Board's findings concerning Client's plan are supported by Claimant's testimony or by Ms. Colon's responses to questions posed by Claimant's counsel. Claimant testified that: she was familiar with Prader Willi Syndrome from working with Client; Client had a calorie-restricted food plan because of her medical condition; Client was allowed only to eat what was on the plan; Claimant was required to get authorization from a clinician or supervisor in order to deviate from Client's food plan; she allowed Client to eat non-plan food offered by ex-employee without obtaining permission from a clinician or supervisor; and she was required to write what Client did in a daily note.[6] (Hr'g Tr. at 22-23, 26-28, R.R. at 25a-26a, 29a-31a.) Ms. Colon, in response to questions from Claimant's counsel, testified that Client "has a specific menu that she needs to follow because of medical reason," has "[a] 1,000 calories per day" restricted diet, and cannot eat rice, which she allegedly ate on the date in question.

---

[6] "The admission of a party opponent is admissible as an exception to the hearsay rule." Dillon v. Unemployment Compensation Board of Review, 68 A.3d 1054, 1060 (Pa. Cmwlth. 2013) (citing Pennsylvania Rule of Evidence 803(25), Pa. R.E. 803(25)).

10

(Hr'g Tr. at 19, R.R. at 22a.) This testimony supports the Board's findings regarding Client's ISP and Employer's protocols. Accordingly, we conclude that the Board did not rely on objected-to hearsay to make its determination that Claimant committed willful misconduct.

Finally, Claimant argues that her actions were not willful misconduct but were, at most, an unintentional mistake or inadvertent violation of Employer's rules. Claimant asserts that she credibly testified that she did not believe she was violating Employer's protocols or rules and that she thought she was acting in Client's best interests when she allowed Client to eat food at ex-employee's house.

Section 402(e) of the Law states that an employee is ineligible for UC benefits for any week "[i]n which h[er] unemployment is due to h[er] discharge or temporary suspension from work for willful misconduct connected with h[er] work . . . ." 43 P.S. § 802(e). This Court has defined willful misconduct as:

> (1) the wanton and willful disregard of the employer's interests, (2) the deliberate violation of rules, (3) the disregard of standards of behavior which an employer can rightfully expect from his employee, or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employee's duties and obligations.

Guthrie v. Unemployment Compensation Board of Review, 738 A.2d 518, 521 (Pa. Cmwlth. 1999). Whether a claimant's conduct rose to the level of willful misconduct is a question of law reviewable by this Court. Docherty v. Unemployment Compensation Board of Review, 898 A.2d 1205, 1209 (Pa. Cmwlth. 2006). "If the employer alleges willful misconduct because the claimant violated a work rule, the employer must prove both the existence of the rule and its violation." Caterpillar, Inc. v. Unemployment Compensation Board of Review, 703 A.2d 452, 456 (Pa. 1997). A claimant must also be "made aware of the

11

existence of the work rule." Bruce v. Unemployment Compensation Board of Review, 2 A.3d 667, 671 (Pa. Cmwlth. 2010). Finally, "[a] disregard of rightfully expected standards of behavior has been described as including a knowing falsehood or misrepresentation to an employer by an employee concerning an employee's work." Groover v. Unemployment Compensation Board of Review, 579 A.2d 1017, 1019 (Pa. Cmwlth. 1990). "[A]n employee's dishonesty constitutes a disregard of expected standards of behavior . . . where the employee's actions are affirmatively deceptive." Id. at 1019-20.

If the employer satisfies its burden, the burden shifts to the claimant to show that he or she had good cause for the conduct. McKeesport Hospital v. Unemployment Compensation Board of Review, 625 A.2d 112, 114 (Pa. Cmwlth. 1993). "A claimant has good cause if his or her actions are justifiable and reasonable under the circumstances." Docherty, 898 A.2d at 1208-09. If a claimant had "good cause for the conduct, it was not willful misconduct." Rossi v. Unemployment Compensation Board of Review, 676 A.2d 194, 198 (Pa. 1996).

Because we concluded above that the Board's findings about Client's restrictions, Employer's protocols, and the incident are supported by substantial competent evidence, those findings support the determination that Employer had a work rule of which Claimant was aware and that Claimant violated that work rule when she allowed Client to eat food that was not part of the food plan without obtaining permission to deviate from the plan. Moreover, Ms. Colon testified that Claimant lied to her when asked whether Claimant took Client to ex-employee's house, and Claimant admitted that she denied taking Client there when asked. Claimant's dishonesty in affirmatively telling Ms. Colon that she did not take

12

Client to ex-employee's home "constitutes a disregard of expected standards of behavior" and is willful misconduct. Groover, 579 A.2d at 1020.

Claimant asserts that she did not intentionally violate Employer's rules or standards of behavior because she believed that the food Client ate at ex-employee's was better than what was on Client's plan and she did not tell Ms. Colon about the trip to ex-employee's house because she had forgotten. However, Claimant testified that she "couldn't even have told you what [Client] ate" at ex-employee's house and she only testified that it was rice, fish, and some vegetables because she "asked recently what was given." (Hr'g Tr. at 27-28, R.R. at 30a-31a.) Claimant further testified that she knew she had to obtain permission to deviate from Client's food plan, there was a 24-hour phone number available for her to contact if necessary, and she did not do so. (Hr'g Tr. at 26-27, R.R. at 29a-30a.) The Board, acting within its role as factfinder, did not credit Claimant's explanations for her actions, and we will not revisit the testimony as Claimant appears to request. Chapman v. Unemployment Compensation Board of Review, 20 A.3d 603, 610 (Pa. Cmwlth. 2011). Therefore, we conclude Claimant did not establish that her actions were reasonable or justified under the circumstances.

For the foregoing reasons, we affirm the Board's Order.

_____
**RENÉE COHN JUBELIRER, Judge**

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tracie A. Kerns,                          :
                                          :
                    Petitioner            :
                                          :
        v.                                :        No. 1069 C.D. 2015
                                          :
Unemployment Compensation                 :
Board of Review,                          :
                                          :
                    Respondent            :

## **O R D E R**

  **NOW**, February 19, 2016, the Order of the Unemployment Compensation Board of Review, entered in the above-captioned matter, is hereby **AFFIRMED**.


  _____
                    **RENÉE COHN JUBELIRER, Judge**