IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carol Markowitz,                                :
                        Petitioner              :
                                                :
            v.                                  :  No. 1743 C.D. 2015
                                                :  Submitted: February 5, 2016
Bureau of Professional                          :
and Occupational Affairs,                       :
State Board of Pharmacy,                         :
                        Respondent              :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                        FILED: August 25, 2016

        Carol Markowitz petitions for review of an adjudication of the State
Board of Pharmacy (Pharmacy Board) denying her request for a reinstatement of
her pharmacy license. Markowitz contends that the Pharmacy Board erred because
she presented reports from her treating physician and psychiatrist that she is stable,
physically and mentally, and ready to resume her profession as a pharmacist.
Markowitz argues that the Pharmacy Board simply disregarded this evidence and
relied, instead, upon a report undertaken by providers appointed by the Pharmacy
Board who did not testify at the hearing. After review, we conclude that we are
constrained to affirm.

        In 1987, the Pharmacy Board issued Markowitz a pharmacy license.
In 2009, the Bureau of Professional and Occupational Affairs (Bureau) initiated an
enforcement action against Markowitz after she attempted suicide. The parties
settled by a consent decree that (1) suspended her license for three years and (2)

stayed the suspension in favor of probation. The probation required her to undergo a mental health evaluation, drug treatment and random drug testing and, finally, to abstain from alcohol. The probation included monitoring by the Professional Health Monitoring Program.[1]

Approximately two months into her probationary period, Markowitz tested positive for Oxazepam, a Schedule IV controlled substance[2] and Ethyl Glucuronide, an alcohol marker. Based on the test results, the Program recommended that Markowitz enter an in-patient residential treatment center for chemical dependency, which she did in October 2009. Markowitz left the center without completing the program and, thereafter, did not report for drug testing as required by the consent decree.

On February 16, 2010, the Bureau instituted an administrative proceeding to enforce the consent decree. Its petition alleged that Markowitz had violated the consent decree and requested the Pharmacy Board to vacate the stay of her license suspension. Markowitz, through her legal counsel, waived her right to

---

[1] According to the Department of State's website, professionals with a physical or mental disorder, including substance abuse, may undergo monitoring so that they can practice their profession safely. There are two "Professional Health Monitoring Programs": a voluntary recovery program and the disciplinary monitoring program for licensed professionals that have been the subject of an enforcement action by their professional licensing board. http://www.dos.pa.gov/ProfessionalLicensing/OtherServices/ProfessionaHealthMonitoringPrograms/Pages/default.aspx (last visited August 19, 2016). It is not clear by what authority these programs were established or receive funding.

[2] Title 28 of the Pennsylvania Code, Section 25.72, lists the schedules of "all controlled substances." "Oxazepam" is listed as a Schedule IV controlled substance. 28 Pa. Code §25.72(e)(1)(xiv).

2

a hearing.[3]  The Pharmacy Board ordered her license suspended for three years, retroactive to February 16, 2010.

The Pharmacy Board's order set forth the terms of reinstatement after completion of the suspension.  It stated:

> [Markowitz] may petition for reinstatement after three years. [Markowitz] must submit to the [Pharmacy] Board satisfactory evidence that [she] is able to practice pharmacy with reasonable skill and safety and has completed at least three years of rehabilitation and continuous sustained recovery. Documentation of such recovery shall include, but is not limited to, the following:
>
>> (a) An evaluation and assessment from a treatment provider approved by the Professional Health Monitoring Program indicating that [Markowitz] is fit to safely practice as a pharmacist;
>>
>> (b) Periodic and random drug and alcohol screening indicating the lack of illicit substances, the last screen to be completed no more than thirty (30) days prior to the petition for reinstatement;
>>
>> (c) A current Criminal History Record Information (a/k/a "Criminal Record Check") from a governmental agency from all states where [Markowitz] has resided since the suspension, compiled no more than three months prior to the petition for reinstatement; and

---

[3] The consent decree set forth the procedure for its enforcement.  It provided that the Bureau would present a petition to the Pharmacy Board's Probable Cause Screening Committee.  Upon a finding of probable cause, the Committee would issue a preliminary order vacating the stay of suspension; terminating Markowitz's probation; and activating the suspension of her license. Upon notice of the preliminary order, Markowitz would have 20 days to request a formal hearing.  If she declined to do so, "the Board shall issue a final order affirming the suspension of [her] license."  Consent Decree at 17.

3

> (d) A signed verification that [Markowitz] has not practiced pharmacy since the suspension.
>
> Prior to reinstatement, [Markowitz] must prove at a formal hearing before the [Pharmacy] Board or its designee that [she] is capable of practicing pharmacy with reasonable skill and safety.

Pharmacy Board Order of May 7, 2010; Reproduced Record at 140 (R.R. __).[4]

In 2013, Markowitz contacted the Department of State's Professional Health Monitoring Program for assistance in pursuing a license reinstatement. At that time, she underwent a psychiatric evaluation by Joseph M. Garbely, D.O., and William J. Heran, Ph.D., who issued a joint report on September 17, 2013. R.R. 134-137.

On August 28, 2014, Markowitz applied for a reinstatement of her license. In support, she attached a clean criminal background check and a number of random drug testing results. She submitted a lab test done on July 30, 2014, by Parkway Clinical Laboratories, which was negative, and nine tests done from May 13, 2013, through August 5, 2013, by Firstlab. Six of the Firstlab tests were positive for amphetamines. Markowitz's application stated that the random drug tests showed she was not taking any substance for which she did not have a valid prescription. Finally, her application included two mental health evaluations. The

---

[4] The consent decree also explained that if the Pharmacy Board suspended her license she would be subject to the following requirements when requesting reinstatement:

> [A]fter at least three (3) years of active suspension and any additional imposed discipline, [Markowitz] may petition the [Pharmacy] Board for reinstatement based upon an affirmative showing that [she] has at least thirty-six (36) months of sustained documented recovery, [she] has undergone an evaluation by a treatment provider approved by [the Program] and is fit to safely practice the profession, and [she] has abided by and obeyed all laws….

Consent Decree at 17.

4

first was from Eric W. Fine, M.D. and the second was from Kevin M. Fosnocht, M.D. Both opined that she was physically and mentally able to work as a pharmacist.

The Pharmacy Board's counsel advised Markowitz that she was obligated to present a fitness assessment from a provider that had been approved by the Professional Health Monitoring Program. The providers who evaluated Markowitz were not on that list. The Pharmacy Board's counsel suggested that Markowitz contact the Program for the name of an approved provider. In response, Markowitz submitted the joint report by Drs. Heran and Garbely completed on September 17, 2013, with a letter explaining that she did not include it with her application because it contained numerous misstatements. She also submitted a medical evaluation done by her psychiatrist, Stanford Bazilian, M.D., who treats her for ADHD.

Seven members of the Pharmacy Board appeared to hear Markowitz's request for reinstatement. The Pharmacy Board's counsel conducted the hearing on March 17, 2015. All of Markowitz's documents in the Pharmacy Board's record were marked as Exhibit B-1. The Bureau lodged a hearsay objection to those reports in Exhibit B-1 that were authored by Drs. Fine, Fosnocht, and Bazilian. It also noted that none of the three were present to testify and none were Program-approved. The Pharmacy Board overruled the objection, explaining that it would determine the weight to give the reports of Drs. Fine, Fosnocht and Bazilian. Markowitz objected to the admission of the joint report of Drs. Garbely and Heran because it contained statements that were not factually true. The Pharmacy Board admitted the report of Drs. Garbely and Heran into evidence, again noting that it would decide the weight to be assigned the expert report.

5

The joint report of Drs. Garbely and Heran detailed Markowitz's psychiatric history and substance abuse history, including "Cannibus [sic] Abuse (In remission)[;] Amphetamine Dependence[;] Attention Deficit Hyperactivity Disorder, by history [ADHD.]" R.R. 137. The report stated that Markowitz denied active alcohol use but admitted to use of marijuana for nausea and vomiting in 1995 when she was being treated with chemotherapy and radiation for breast cancer. R.R. 135. The report stated that Dr. Bazilian, her psychiatrist, reported that he had prescribed 20 mg of Adderall per day for her ADHD. By contrast, Markowitz reported to Drs. Garbely and Heran that Dr. Bazilian had prescribed 120 mg of Adderall per day. The joint report summarized Markowitz as "oppositional" and in a victim stance. It recommended that Markowitz cease taking all mind altering substances for an extended period of time before being considered for a license reinstatement.[5] The joint report concluded that Markowitz's "poor attitude towards monitoring may make her likelihood to be free of addictive substances very slim." R.R. 137.

Markowitz saw Dr. Fine, a psychiatrist, on two occasions for the purpose of evaluating her readiness to return to her pharmacy practice. His report noted that Markowitz had been prescribed amphetamines for many years to treat her ADHD, and he did not believe she was addicted to amphetamines. He opined that there was no psychiatric or physical impediment to her ability to resume her profession as a pharmacist.

Dr. Fosnocht practices internal medicine, and Markowitz is his patient. He issued a report opining that Markowitz was clinically stable. Her

---

[5] The report does not specify whether this included the Adderall prescribed by her psychiatrist.

6

ADHD was managed by her psychiatrist, and she exhibited no symptoms that would preclude her employment as a pharmacist.

Dr. Bazilian, Markowitz's psychiatrist, reported that in spite of past difficulty, her ADHD is now under control with a daily dose of 30 mg of Adderall, an amphetamine. He opined that there has been significant improvement with her depression and that she does not exhibit suicidal tendencies. He opined that there was no medical or psychological condition that precludes her from being able to resume her profession.

Markowitz testified, first, about her 2009 license suspension. After working for a number of years for different pharmacies, without problem or incident, she decided to set up her own pharmacy. Her business partner used her license number to set up secret wholesale accounts to divert drugs. When she found out, she "kicked him out of the pharmacy." Notes of Testimony at 32 (N.T. __). The partner diverted over "98 bottles of 500 tablets of oxycodone and … Vicodin ES." N.T. 32. This prompted a criminal investigation. At the same time the pharmacy began to experience financial difficulties. In the midst of this stress, Markowitz attempted suicide by ingesting some of the diverted oxycodone tablets. The overdose caused a serious thrombosis that led to an extended hospitalization, the loss of her business and her pharmacist license.

Markowitz challenged the claim in the joint report of Drs. Garbely and Heran that she abused cannabis. She acknowledged that in 2008, she was arrested for having a marijuana plant in her house, but it belonged to her husband. In any case, she was not convicted.

Markowitz produced documentation on all the pharmacy courses she has taken to advance her clinical knowledge and remain current on continuing

7

education requirements for her profession. She also presented the testimony of her husband, a retired licensed professional counselor who works in a drug and alcohol clinic. He saw no evidence that his wife was addicted. He reported that he had worked part-time at the pharmacy she owned. He observed her interaction with customers to be "very professional." N.T. 24.

The Bureau's sole witness was Kali Harding, a case manager with the Professional Health Licensing Program. She explained that a "Program-approved provider" is one who is licensed in Pennsylvania; has training and experience with patients with addictions; and agrees to follow Program guidelines. Harding testified that when Markowitz contacted the Program in 2013, she was directed to the peer assistance program for pharmacists. That led to the evaluation by Drs. Garbely and Heran. When Markowitz again contacted the Program in 2014, she was advised to undergo a five-day inpatient evaluation, but she did not do so. Until Markowitz testified that the evaluation would cost $6,000,[6] Harding was not aware of its cost.

The Pharmacy Board held that Markowitz did not meet her burden of proving that she was fit to practice pharmacy safely and, thus, denied her reinstatement request. The Pharmacy Board stated it "[was] not convinced by [the] reports" of Drs. Fine, Bazilian and Fosnocht. Pharmacy Board Adjudication at 9. Further, Markowitz failed to produce a positive evaluation from a provider that had been approved by the Professional Health Licensing Program. Drs. Fine, Bazilian and Fosnocht are not Program-approved providers as are Drs. Garbely and Heran, who opined that Markowitz was not ready for a reinstatement of her license. The

---

[6] Markowitz testified that she lacked the funds to pay for this evaluation in addition to the $950 she spent on the joint report.

drug screenings done on Markowitz, completed over a four-month period as part of her evaluation by Drs. Garbely and Heran, showed amphetamine use in the >10000 ng/mL range on four occasions; in the 18291 ng/mL range on one occasion; in the 54121 ng/mL range on one occasion; and negative for drug use on three occasions. R.R. 73-74. Markowitz tested positive for amphetamine use as recently as July 2013. The Pharmacy Board held that given those test results, Markowitz did not establish three years of sustained recovery, which was required under the 2010 suspension as a condition for reinstatement.

Markowitz petitioned for this Court's review.[7] She has raised four issues. First, she contends that the Pharmacy Board erred in admitting the joint report of Drs. Heran and Garbely when they did not testify, their qualifications are unknown and their report stale. Second, she contends that the Pharmacy Board erred in admitting the joint report over Markowitz's objections. Third, she contends that she satisfied her evidentiary burden for reinstatement with her evidence. Fourth, she contends that the Pharmacy Board abused its discretion in refusing reinstatement for the stated reason that Dr. Fine is not a Program-approved provider.

---

[7] Our review determines whether the Pharmacy Board abused its discretion, committed an error of law, or violated constitutional rights. *DePanfilis v. State Board of Pharmacy*, 551 A.2d 344, 345 (Pa. Cmwlth. 1988). The Pharmacy Board's decision must be supported by substantial evidence. *Cassella v. State Board of Medicine, Bureau of Professional and Occupational Affairs*, 547 A.2d 506, 510 n.23 (Pa. Cmwlth. 1988). "Substantial evidence is that relevant evidence which a reasonable mind might accept as adequate to support a conclusion." *Hercules, Inc. v. Unemployment Compensation Board of Review*, 604 A.2d 1159, 1163 (Pa. Cmwlth. 1992).

9

Section 5(a)(4) of the Pharmacy Act[8] authorizes the Pharmacy Board, upon probable cause, to compel a pharmacist to submit to an examination by "physicians or psychologists approved by the [Pharmacy B]oard." 63 P.S. §390-5(a)(4).[9] It also provides that a pharmacist whose license has been suspended be given the opportunity to demonstrate that he or she can resume a competent practice of pharmacy with reasonable skill and safety to patients. *Id.* Moreover, Section 5(c) provides that after a license has been suspended for lack of fitness, the Pharmacy Board may:

> (1) Deny the application for a license.
>
> (2) Administer a public reprimand.
>
> (3) Revoke, suspend, limit or otherwise restrict a license as determined by the [Pharmacy B]oard.

---

[8] Act of September 27, 1961, P.L. 1700, *as amended*, 63 P.S. §§390-1 – 390-13.

[9] It states:

> (a) The [Pharmacy B]oard shall have the power to refuse, revoke or suspend the license of any pharmacist upon proof satisfactory to it that the pharmacist:
>
> ***
>
> (4) Is unfit or unable to practice pharmacy by reason of a physical or mental disease or disability. In enforcing this clause, *the [Pharmacy B]oard shall, upon probable cause, have authority to compel a pharmacist to submit to a mental or physical examination by physicians or psychologists approved by the [Pharmacy B]oard.* Failure of a pharmacist to submit to such examination when directed by the [Pharmacy B]oard, unless such failure is due to circumstances beyond his or her control, shall constitute an admission of the allegations against him or her, consequent upon which a default and final order may be entered without the taking of testimony or presentation of evidence. A pharmacist affected under this clause shall at reasonable intervals be afforded an opportunity to demonstrate that he or she can resume a competent practice of pharmacy with reasonable skill and safety to patients.

63 P.S. §390-5(a)(4) (emphasis added).

10

*(4) Require a licensee to submit to the care, counseling or treatment of a physician or a psychologist designated by the [Pharmacy B]oard.*

*(5) Suspend enforcement of its finding thereof and place a licensee on probation with the right to vacate the probationary order for noncompliance.*

(6) Restore or reissue, in its discretion, a suspended license to practice pharmacy and impose any disciplinary or corrective measure which it might originally have imposed.

63 P.S. §390-5(c)(emphasis added).

Markowitz's brief focuses upon the joint report of Drs. Heran and Garbely. She claims it should not have been admitted in light of her objection and because the authors did not appear in person to testify; accordingly, she was unable to confront and cross-examine them on the mistakes that appear in their report.

The Bureau responds that Markowitz did not raise a hearsay objection at the hearing. She challenged only its accuracy. In any event, the report's admissibility is irrelevant because Markowitz did not prove that she is entitled to reinstatement. The reasons are several: Markowitz did not submit an evaluation from a Program-approved provider that she was fit to practice pharmacy; the favorable reports produced by Markowitz were hearsay; and Markowitz did not submit proof of three years of sustained recovery.

"Hearsay is defined as an out-of-court statement, either oral or written, offered in court for the purpose of proving the truth of the matter contained in the statement." *Bailey v. Unemployment Compensation Board of Review*, 597 A.2d 241, 243 n. 3 (Pa. Cmwlth. 1991). "Hearsay evidence, [p]roperly objected to, is not competent evidence to support a finding[ ]," but "[h]earsay evidence, [a]dmitted without objection, will be given its natural probative effect and may support a finding[ ], [i]f it is corroborated by any competent evidence in the

11

record...." *Walker v. Unemployment Compensation Board of Review*, 367 A.2d 366, 370 (Pa. Cmwlth. 1976). "[A] finding of fact based [s]olely on hearsay will not stand." *Id.*

It is clear that the joint report is hearsay and not corroborated by other evidence of record. We agree with Markowitz that the report of Drs. Heran and Garbely should not have been considered by the Pharmacy Board. However, that does not resolve this appeal. Markowitz had the burden of proof in this case, and she did not present any physician to testify in person. As such, all of the medical opinions contained in her expert reports also constitute hearsay.

The May 7, 2010, order states that in order to qualify for reinstatement, Markowitz must provide an "evaluation and assessment from a treatment provider approved by the Professional Health Monitoring Program indicating that [she] is fit to safely practice as a pharmacist[.]" R.R. 140. Markowitz did not present this evidence. Notably, this requirement is not found in the statute, which states that "at reasonable intervals" a pharmacist must be afforded an opportunity to demonstrate that he or she can resume a competent practice ...." 63 P.S. §390-5(a)(4). The statute does not require that this demonstration be made only through the opinion of a Program-approved provider.[10]

---

[10] Section 7 of the Pharmacy Act states as follows:

(d.3) *The board*, with the approval of the Commissioner of Professional and Occupational Affairs, *shall appoint and fix the compensation of a professional consultant who is a licensee of the board* with education and experience in the identification, treatment and rehabilitation of persons with physical or mental impairments. Such consultant shall be accountable to the board and shall act as a liaison between the board and treatment programs, such as alcohol and drug treatment programs licensed by the Department of Health, psychological

**(Footnote continued on the next page . . . )**

In her brief, Markowitz argues that the Bureau failed to authenticate the Heran and Garbely report and did not present competent evidence to challenge Dr. Fine's report. Accordingly, Dr. Fine's report in support of her license reinstatement became the "controlling document" in the case. Markowitz Brief at 32. First, the Bureau did not present the Heran and Garbely report; Markowitz submitted it to the Pharmacy Board. The Bureau had no obligation to authenticate it. Second, the exclusion of the Heran and Garbely report does not make Fine's report dispositive. The Bureau challenged Dr. Fine's report on hearsay grounds, not on his qualifications.

Markowitz agreed to undergo periodic and random drug screenings. A lab test done by Parkway Clinical Laboratories on July 30, 2014, was negative. However, there was no evidence that it was a random drug screening; it certainly was not periodic. The results submitted by Markowitz from Firstlab appear to be random and periodic; however, they show positive results for amphetamines. Markowitz contended that the positive amphetamine readings were due to her prescription for Adderall. That may be so. However, Markowitz had the burden to present evidence of random and periodic drug screenings, and the drug screenings she presented showed amphetamine use. It was her burden to show the varying levels of amphetamine usage documented in her drug tests correlated to the amount of Adderall she was legally prescribed at the time. She did not do so.

---

**(continued . . . )**

counseling and impaired professional support groups approved by the board and which provide services to licensees under this act.

63 P.S. §390-7(d.3) (emphasis added). This provision does not authorize the Pharmacy Board to establish a list of "approved providers" to govern a pharmacist's license reinstatement. It is not clear whether the Pharmacy Board has appointed a "professional consultant." *Id.*

The Pharmacy Board's demand that Markowitz spend $6,000 on an evaluation does not appear grounded in statute or even fair given her current financial difficulties. The statute states that the Board may require her examination by "physicians or psychologists approved by the [Pharmacy B]oard." 63 P.S. §390-5(a)(4). It does not say she cannot challenge the results of that examination, nor does it condition her reinstatement upon the approval of a Program-approved physician or psychologist.

We are left with a difficult record. Dr. Bazilian prescribed Adderall, and this prescription showed up in her drug tests. Markowitz testified that she was trying to get off the drug in order to get her pharmacy license, an idea Dr. Fine thought unadvisable. Markowitz needs to prove that her Adderall use is appropriate and not an impediment to her ability to work as a pharmacist.

She has not done so yet and, accordingly, we are constrained to affirm the order of the Pharmacy Board.

_____
MARY HANNAH LEAVITT, President Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carol Markowitz,                          :
                    Petitioner            :
                                          :
          v.                              :   No. 1743 C.D. 2015
                                          :
Bureau of Professional                    :
and Occupational Affairs,                 :
State Board of Pharmacy,                  :
                    Respondent            :

## **O R D E R**

AND NOW, this 25th day of August, 2016, the order of the State Board of Pharmacy, dated August 25, 2015, in the above-captioned matter is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge